Argued February 17, affirmed March 22, reconsideration denied April 28, petition for review denied June 22, 1976

STATE OF OREGON, *Respondent,*

*v.*

FRANK PHILLIP ARMSTRONG, *Appellant.*

(No C 74-10-3307 Cr, CA 4588)

547 P2d 170

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Donald L. Paillette,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

**LANGTRY, J.**

Defendant appeals from conviction of theft in the first degree. ORS 164.055. He contends the circuit court erred in refusing to grant in its entirety his motion to suppress "all evidence of statements made by [him] or his Co-Defendant * * *" immediately prior to their arrest, as well as property subsequently seized from him. Pointing out that investigating officers illegally "intercepted" and monitored a conversation in which he and his codefendant participated in violation of the terms of ORS 165.540(1)(c),[1] defendant suggests that *all* evidence of statements made during that conversation, together with physical evidence obtained as a result of police "use" of those statements, was inadmissible in the court below under ORS 41.910(1).[2]

The relevant facts found by the trial court are: During the morning hours of October 25, 1974 Sergeant Englert of the Multnomah County Sheriff's Office was contacted by a Mr. Rasmussen who, because he believed a third party had been attempting to get in touch with him in order to arrange the sale of stolen goods, requested that his home be "staked out." Accompanied by three other deputies, Englert proceeded to the Rasmussen residence where, with the consent of Rasmussen, he attached a recording device to the telephone in order to preserve a call expected

[1] "* * * [N]o person shall:

"* * * * *

"(c) Obtain or attempt to obtain the whole or any part of a conversation by means of any device, contrivance, machine or apparatus, whether electrical, mechanical, manual or otherwise, if all participants in the conversation are not specifically informed that their conversation is being obtained." ORS 165.540(1)(c).

"As used in ORS 41.910, 133.723 to 133.725 and 165.540:

" 'Conversation' means the transmission between two or more persons of an oral communication which is not a telecommunication, or a radio communication." ORS 165.535(1).

[2] "Evidence of the contents of any * * * conversation obtained:

"(1) By violation of ORS 165.540 * * * shall not be admissible in any court of this state." ORS 41.910(1).

from the suspect. That afternoon Rasmussen received a call from a Jayn Martin and an individual later identified as the defendant. The topic of that call was the sale of diamond rings which defendant conceded to be stolen. After preliminary negotiations had been completed, the parties to the call agreed to meet within an hour at the Rasmussen home to consummate the sale. The telephone conversation had been recorded and was reviewed by Englert.

Prior to the arrival of defendant and Jayn Martin, Englert—again with the consent of Rasmussen—installed a listening device in the living room of the home so that he and his fellow officers might monitor the planned conference from an adjoining bedroom. Upon their arrival defendant and Martin resumed their negotiations with Rasmussen for the sale of the rings in defendant's possession; an agreement was reached and the exchange of the goods bargained for— one of the two ring sets offered for sale by defendant— took place. Overhearing this development, Englert and the other deputies emerged from the bedroom and placed the defendant and Martin under arrest. A search of defendant then produced $300 in marked bills previously supplied to Rasmussen for the purchase of the rings, $400 in other cash and a small silver ingot belonging to Rasmussen which had also been used to meet the purchase price, and a second set of rings. Rasmussen turned over to the deputies the rings he had acquired from the defendant.

The trial court entered an order granting in part and denying in part defendant's motion to suppress, concluding:

"The telephone conversation between Mr. Rasmussen, Jayn Martin, and a person later identified as the defendant, was not obtained in violation of ORS 165.540(1)(a) or 47 U.S.C. § 605 as superceded and replaced by 18 U.S.C. § 2510, § 2511(2)(c) as Mr. Rasmussen was a party

to the conversation and consented to its being intercepted.[3]

"* * * * *

"Sergeant Englert intercepted the conversation between Mr. Rasmussen, Jayn Martin, and the defendant in the living room by means of an electronic device without informing Jayn Martin or the defendant that their conversation was being intercepted and without reasonable cause to believe that an offense involving narcotics or dangerous drugs was being committed or had been committed.[4] Their testimony concerning this conversation is suppressed * * *.[5]

---

[3] Defendant does not challenge this specific ruling; he concedes that the telephone conversation was "an independent source of information [unrelated to and prior to the eavesdrop] which formed probable cause for the inevitable identification and arrest of the defendant and the searches and seizures."

[4] ORS 165.540(5)(a) provides:

"The prohibitions in paragraph (c) of subsection (1) of this section [see n 1] do not apply to a law enforcement officer who uses a listening or recording device, machine or apparatus to obtain a conversation between himself or someone under his direct supervision and a person *whom he has* reasonable cause to believe has committed, or is engaged *in committing, a crime involving narcotic or dangerous drugs* as defined and made punishable by the laws of this state or of the United States." (Emphasis supplied.)

Shortly after the arrests Detective Woods submitted a "Special Report" to the district attorney's office requesting a complaint; later a second report was submitted. Those reports were identical except that in the first Jayn Martin was described as "a known female thief with a criminal background, known by many members of the MCSO Detective Section," and in the second as "a known female thief with a criminal & narcotics background, known by many members of the MCSO Detective and Narcotics Section." Sergeant Englert testified that he was responsible for the change and that it had been made because the first report, written in an "emergency situation" as part of an attempt to have Martin arraigned quickly, had not met his approval. Englert explained that he made no attempt to withdraw the first report to avoid creating the impression his office was attempting to hide something; he also explained that in a case such as this one his office generally tried not to divulge that an eavesdrop had been used "to keep people from being educated to the fact that we're using these types of devices," but that this reluctance did not represent an attempt to "go around the law or anything like that." Violation of ORS 165.540(1)(c) is punishable by a fine of not more than $3,000 and/or imprisonment in the penitentiary for not more than three years. ORS 165.540(6)(a).

[5] No appeal has been taken by the state from this portion of the court's order.

"The motion of defendant to suppress as evidence the testimony of Mr. Rasmussen as to the content of the conversation had in Mr. Rasmussen's living room between the defendant and Jayn Martin is denied for the reason that he did not obtain the contents of this communication by means of the electronic device.

"Sergeant Englert, having listened to the recorded telephone conversation and notwithstanding the illegal interception of the oral communication in Mr. Rasmussen's home, had probable cause to believe that the crime of theft had been and was being committed, and had been committed by the defendant and his accomplice, Jayn Martin. The arrest of the defendant was therefore reasonable.

"The court further finds that the resultant seizure of the rings which were the basis of this indictment was reasonable and seized from Mr. Rasmussen and not from the defendant.

"The court further finds that the seizure of the pear shaped diamond rings and the ring box from the defendant's pocket was reasonable as incident to the defendant's lawful arrest."

Defendant takes the position that in order "to deter violations of ORS 165.540 [and] * * * to give overall effect to the strong public policies against the 'evils' of illegal 'bugging' " *both* the testimony of Englert and his fellow officers relating to the intercepted conversation *and* the "fruit of the poisonous tree"— *e.g.,* the testimony of Rasmussen himself, and the rings seized subsequent to defendant's arrest from both Rasmussen and the defendant—ought to have been suppressed.

Assuming without deciding that the "poisonous fruit doctrine"[6] applies with equal effect where statutory, rather than constitutional, limitations upon police conduct have been exceeded,[7] we find that under the

---

[6] *See* Wong Sun v. United States, 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963); Nardone v. United States, 308 US 338, 60 S Ct 266, 84 L Ed 307 (1939); Silverthorne Lumber Co. v. United States, 251 US 385, 40 S Ct 182, 64 L Ed 319, 24 ALR 1426 (1920).

[7] Refusing to consider tape recordings secured in violation of ORS 165.540 which had been offered as evidence in a bar disciplinary proceeding, the Supreme Court held in In re William M. Langley, 230 Or 319,

circumstances of this case the circuit court did not err in denying defendant's motion.

In *State v. Garrison,* 21 Or App 155, 534 P2d 210, Sup Ct *review denied* (1975), we note the "inevitable discovery rule," widely accepted among courts, had been codified in Oregon as ORS 133.683.[8] Courts recognizing this limitation have held that evidence arguably derived from other illegally obtained evidence is not inadmissible under the "fruit of the poisonous tree" doctrine where it is shown that such evidence would also have been gained in the absence of the illegality. *See* R. Pitler, *"The Fruit of the Poisonous Tree,"* 56 Cal L Rev 579 (1968).[9]

Thus, while the testimony of a witness who has been discovered in the first instance by the exploitation of illegal police conduct is inadmissible, where that same witness would also have been discovered

---

370 P2d 228 (1962), that although such proceedings were not governed by the same rule of evidence applicable to criminal prosecutions, admission of "illegal tape recordings, evidence secured unlawfully by wire-tapping, *or other fruits of criminal eavesdropping * * *"* (emphasis supplied; 230 Or at 323) would be inconsistent with the public policy expressed by ORS 165.540.

[8]"If a search or seizure is carried out in such a manner that things seized in the course of the search would be subject to suppression, and if as a result of such search or seizure other evidence is discovered subsequently and offered against a defendant, such evidence shall be subject to a motion to suppress unless the prosecution establishes by a preponderance of the evidence that such evidence would have been discovered by law enforcement authorities irrespective of such search or seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of ORS 133.525 to ORS 133.703." ORS 133.683.

[9]The United States Supreme Court said in Wong Sun v. United States, 371 US 471, 487-88, 83 S Ct 407, 9 L Ed 2d 441 (1963), the "fruit of the poisonous tree" doctrine

"* * * has no application because the Government learned of the evidence 'from an independent source' * * * [or] the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint' * * * [T]he * * * question in [every] case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959) * * *."

regardless of the illegal conduct, his or her testimony is not generally regarded as the product or "fruit" of the illegality and may, therefore, be used by the state. *See Lockridge v. Superior Court,* 3 Cal 3d 166, 89 Cal Rptr 731, 474 P2d 683 (1970), *cert denied* 402 US 910 (1971), and cases cited therein. *See also* Annotation, 43 ALR3d 385 (1972).

■ Rasmussen's testimony was not obtained as a result of the violation of ORS 165.540(1)(c) by Sergeant Englert and his associates. Rasmussen had on his own initiative informed the police of the possibility that an illegal transaction was being proposed; he invited the officers to his home and consented to the recording of the telephone call which preceded defendant's appearance at the scene. As a party to the subsequent conversation in his living room Rasmussen was a competent witness as to its contents; that testimony was not "tainted" by the fact that the same conversation was illegally intercepted by the police. There is no significant relationship between the unlawful activity and Rasmussen's testimony.[10]

■ It is equally apparent that the conversation intercepted by the police provided information which was merely cumulative with regard to their authority to arrest the defendant. As defendant concedes, the evidence which had lawfully come into the hands of the police prior to their use of the eavesdropping device was sufficient in and of itself to permit them to make an arrest. The conversation intercepted served only to confirm the reasonable belief that defendant was in possession of stolen goods. The information obtained by the use of the eavesdrop was, therefore, at best a "contributing cause" rather than the "effective cause" of defendant's arrest.

Defendant argues strenuously, however, that in

---

[10] As noted by the circuit court, the specific rings upon which the indictment in this case was based were those turned over to the police by Rasmussen following the completion of his transaction with defendant; like Rasmussen's testimony itself, this evidence was not located by the police as a result of their illegal conduct and was therefore admissible.

cases such as this, suppression is necessary as a last resort to deter police violations of ORS 165.540. As we noted above, the legislature has provided that violation of ORS 165.540 (1) (c) constitutes a crime punishable as a felony; we believe suppression of evidence otherwise admissible under the inevitable discovery rule would add little to this already existing deterrent. The Supreme Court noted in *Alderman v. United States,* 394 US 165, 89 S Ct 961, 22 L Ed 2d 176 (1969), that the Omnibus Crime Control and Safe Streets Act of 1968, 18 USC §§ 2510-2520 (1970), imposed criminal penalties upon those engaging in illegal eavesdropping and concluded that the extension of the exclusionary rule sought by the defendants could not be justified by assuming that these criminal penalties would be "cavalierly disregarded or * * * not be enforced against transgressors." 394 US at 175. We cannot assume that district attorneys in this state will fail to enforce the provisions of ORS 165.540 against all "transgressors"—police and nonpolice alike.

Affirmed.