IN RE A SPECIAL INVESTIGATION
NO. 219

[No. 1586, September Term, 1981.]

\* \* \*

IN RE A SPECIAL INVESTIGATION
NO. 220

[No. 1618, September Term, 1981.]

*Decided June 3, 1982.*

18

The cause was argued before Lowe and Wilner, JJ., and Edward D. Higinbothom, Associate Judge of the Third Judicial Circuit, specially assigned.

No. 1586, *Stefan D. Cassella, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

No. 1618, *James R. Wooten,* with whom were *Andrew Radding* and *Burke, Gerber, Wilen, Francomano & Radding* on the brief, for appellant.

No. 1586, *Andrew Radding,* with whom were *James Wooten* and *Burke, Gerber, Wilen, Francomano & Radding* on the brief, for appellee.

No. 1618, *Stefan D. Cassella, Assistant Attorney General,* with whom were *Deborah K. Handel, Assistant Attorney General,* and *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

Wilner, J., delivered the opinion of the Court.

These two appeals, along with a third that was argued in March, 1982 (*In Re A Special Investigation No. 188,* Sept.

Term, 1981, No. 1486), arise out of an investigation currently being conducted by the Medicaid Fraud Unit of the Attorney General's Office in conjunction with the Grand Jury of Baltimore City. The principal objects of the investigation appear to be an entity known as Good Luck Nursing Home, Inc., which operates a nursing home in Lanham, Maryland, known as Magnolia Gardens Nursing Home (Magnolia), and certain individuals associated with those entities.

During the course of the investigation, the Attorney General learned that one Thomas Blackwell had been the accountant for those entities and that he had or might have certain information or records relevant to the inquiry. Because Blackwell's residence and office were located in Virginia, which is presumably where his records were kept, the Attorney General invoked the Maryland Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings (Md. Code, Courts art., § 9-301, *et seq.*) in order to secure his attendance.

Acting at the Attorney General's request and pursuant to Courts art. § 9-303 (a), the Criminal Court of Baltimore (Bell, J.) on November 6, 1981, issued an "Amended Certification" stating, among other things, that Blackwell was a material and necessary witness in the grand jury investigation and that he had in his possession documents material and necessary to that investigation. The Certification stated that "[s]aid documents include all workpapers, invoices, memoranda, correspondence, notes or other records pertaining to work performed *for the years 1976 to 1980"* for Magnolia and the associated persons and entities. (Emphasis supplied.) It provided that Blackwell would be "required to appear and to produce *said document [sic]* for no more than one day on November 30, 1981." (Emphasis supplied.)

The Criminal Court's Amended Certification was presented to the Circuit Court of Fairfax County, Virginia, which, on November 24, 1981, and in accordance with the Virginia counterpart of the Uniform Act (Va. Code, § 19.2-274), conducted a hearing and ordered Blackwell to:

> "appear at 10:00 a.m. on the 30th day of November, 1981, in the State of Maryland, Criminal Court . . . and testify and produce documents including all workpapers, invoices, memoranda, correspondence, notes or other records pertaining to work performed *for the years 1976 to 1980*"

for Magnolia and the other associated persons and entities. (Emphasis supplied.)

Blackwell resisted the order by various legal maneuverings,[1] but eventually, when they proved unsuccessful, he appeared before the grand jury pursuant to the order on January 5, 1982. He brought with him and turned over to the grand jury the various records covered by the Virginia court order for the years 1976 through 1979. He did not bring or deliver any records for the year 1980, because, he said, upon the advice of counsel, he did not interpret the order to require such records.

The Attorney General did not pursue the matter of the 1980 records that day. Blackwell apparently testified and then returned to Virginia. On January 21, 1982, the Attorney General filed a motion in the Criminal Court of Baltimore for an order of that court compelling Blackwell to turn over the 1980 records. The motion was grounded upon the premise that such records were included under the Virginia order — that the phrase "1976 to 1980" should be interpreted as including 1980. Blackwell responded with a motion to quash, asserting that a Maryland court had no jurisdiction to compel a Virginia resident to produce records located in Virginia.

After a hearing on the matter, the Criminal Court of Baltimore (Allen, J.), on January 25, 1982, declined to rule on Blackwell's jurisdictional argument, but denied the Attorney

---

1. On or just before the day he was due to appear (November 30), Blackwell filed a motion in the Criminal Court of Baltimore to quash the order to appear. When that was denied, he appealed; and when he was unsuccessful before us, he sought review in the Court of Appeals. *See In Re: A Special Investigation*, S.T. 1981, Misc. No. 29, *cert. den.* Ct. of App. Pet., Docket No. 554.

General's motion to compel upon a finding that the 1980 records were not included within the ambit of the Virginia order. It construed the word "to," as used in that order, as *exclusive* rather than *inclusive* of the ending term.

The Attorney General made a dual and immediate response to the court's ruling. On the same day — January 25, 1982 — he (1) noted an appeal from the court's denial of his motion to compel (No. 1586), and (2) petitioned the Criminal Court for a certification to require one Bruce Johnson, an employee of Blackwell also residing in Virginia, to appear before the grand jury and to bring with him the same 1980 records sought from Blackwell.

In support of this new petition with respect to Johnson, the Attorney General offered the court an affidavit of the Assistant Attorney General conducting the probe. At the Attorney General's request, however, the affidavit was not shown to counsel for Johnson, but was read by the court and then sealed. The court granted the Attorney General's petition and promptly (on January 25, 1982) issued a certification under the Uniform Act that Johnson was a necessary witness in the investigation and that he would be required to appear before the grand jury on April 12, 1982 "for no more than one day" and "to produce, deposit and turn over to the Grand Jury all books, records, accountant's workpapers, notes, memoranda and other documents related to work he has done for or on behalf of [Magnolia and the other associated persons and entities] for the years 1976 through 1980, inclusive."

Johnson took an immediate appeal (No. 1618) from the January 25 certification, which has never been presented to the Virginia court.

Each side has moved to dismiss the appeal of the other, essentially on jurisdictional grounds. In No. 1586, Blackwell repeats his argument that the Criminal Court lost whatever jurisdiction it had over him when he completed his day's testimony and returned to Virginia, and that it has no further authority to compel him to do anything absent some further order of the Virginia court. In No. 1618, the Attorney

General argues that the Criminal Court's certification as to Johnson is not an appealable order. We think that both of these positions are correct, and thus shall dismiss the appeal in No. 1618. As to No. 1568, although the Criminal Court did not have the requisite *in personam* jurisdiction to do what the Attorney General wanted, it did have appropriate subject matter jurisdiction to consider and *deny* the motion to compel; and we, of course, have jurisdiction to review that ruling which effectively precluded the Attorney General from further litigating in Maryland his rights against Blackwell under the existing Virginia court order. We therefore shall consider that appeal but shall affirm the lower court's order.

The Uniform Act provides what is essentially a two-stage process for obtaining the compulsory attendance of an out-of-State witness in criminal prosecutions and grand jury investigations.

The first stage originates in the requesting State (Maryland). A person desiring the attendance of an out-of-State witness may approach the appropriate court in his State and, if he is able to convince that court that such be the case, obtain from it a formal certificate under seal that the individual whose presence is sought "is a material witness in a prosecution pending in [the court] or in a grand jury investigation which has commenced or is about to commence. . . ." The certificate, if it is issued, must also specify "the number of days the witness will be required." Md. Code, Courts art. § 9-303 (a).

The second stage is to present the certificate "to a judge of a court of record in the county in which the witness is found." *Id.* That judge, upon such presentation, schedules a hearing on the matter. At that hearing, which the witness is directed to attend, the judge considers and determines whether the certificate presented to him has merit — whether the witness is material and necessary to a prosecution or grand jury investigation, whether it would cause any undue hardship on the witness to attend as requested, and whether the witness will be afforded the immunity from arrest and civil process

required by the Act. If the judge finds that these statutory prerequisites are satisfied, he "shall issue a summons, with a copy of the certificate attached, directing the witness to attend and testify . . . at a time and place specified in the summons." Md. Code, Courts art., § 9-302 (b); Va. Code, § 19.2-274.

If, after being tendered the appropriate traveling expenses and witness fee, the witness "fails without good cause to attend and testify as directed in the summons, he shall be punished in the manner provided for the punishment of any witness who disobeys a summons issued from a court of record in this [i.e., the sending] State." Md. Code, Courts art., § 9-302 (d); Va. Code, § 19.2-276.

It is clear, under this arrangement, that except to provide a basis for invoking the jurisdiction of the Virginia court and to serve as "prima facie evidence of all the facts stated therein" (Md. Code, Courts art., § 9-302 (b); Va. Code, § 19.2-274), the certificate issued by the Criminal Court of Baltimore had no efficacy whatever. It was not a judgment of that court or any kind of order that was directly, immediately, or automatically enforceable. It conferred no right greater than a standing to approach the Virginia court, and certainly did not in any way foreclose the ability of Johnson to contest its averments. He had (and presumably still has) the right to litigate the issue in the Virginia courts; and unless and until the Attorney General can persuade the Virginia court to issue a summons, Johnson is under no obligation to do anything. See *Appel v. State of New York*, 243 Md. 218 (1966); *Epstein v. People of the State of New York*, 157 So.2d 705 (Fla.App. 1963); *Application of Stamler*, 111 N.Y.S.2d 313 (A.D. 1952); *In re Cooper*, 22 A.2d 532 (N.J. 1941).

Subject to the enumerated exceptions in Md. Code, Courts art., § 12-303, none of which apply here, a party may appeal to this Court only from a "final judgment" entered by a circuit (or Supreme Bench) court. As a general rule, in order to be appealable a "judgment must be so final as to determine and conclude rights involved, or deny the appellant means of

further prosecuting or defending his rights and interests in the subject matter of the proceeding." *Peat, Marwick, Mitchell & Company v. The Los Angeles Rams Football Company,* 284 Md. 86, 91 (1978), quoting from *United States Fire Insurance Company v. Schwartz,* 280 Md. 518, 521 (1977). As we have observed, the certificate appealed from in No. 1618 meets neither of those tests. It is not an appealable judgment.

With respect to No. 1586, it is axiomatic that "[i]n the absence of a statute, a state court cannot require the attendance of a witness who is a nonresident of and is absent from the state." Annot., *Uniform Act to Secure Attendance of Witnesses From Without a State in Criminal Proceedings,* 44 A.L.R.2d 732, 733 (1955). Nor, absent a statute, can the State compel a nonresident witness to produce records in the State. As succinctly stated in *Bartell v. Bartell,* 278 Md. 12, 19 (1976), "Obviously, the subpoena powers of the State of Maryland stop at the state line." [2]

Blackwell was in Maryland on January 5, 1982, pursuant to a summons issued by the Virginia court, not by virtue of any order issued in Maryland. It may be that, while he was here, the Criminal Court of Baltimore could have resolved the dispute over the 1980 records; and, if it found that Blackwell had "fail[ed] without good cause to attend and testify as directed in the summons," it could have exercised its authority under Md. Code, Courts art. § 9-303 (b) and punished him "in the manner provided for punishment of any witness who disobeys a summons issued from a court of

---

**2.** The Attorney General's reliance on *A. V. Laurins & Company, Inc. v. Prince George's County,* 46 Md.App. 548 (1980), and *Tvardek v. Tvardek,* 257 Md. 88 (1970), as establishing a contrary rule is grossly misplaced. It is true, as those cases and others hold, that when a court acquires general *in personam* jurisdiction over a person, that person may not defeat the court's jurisdiction by leaving the State; in such instances, subpoenas and other orders may validly issue and be served upon counsel of record. Here, however, the Criminal Court had never obtained general *in personam* jurisdiction over Blackwell. He was here by order of the Virginia Court for one special purpose and for one day only. There was no continuing jurisdiction. At the end of the day, like Brigadoon, it disappeared.

record in this State." But that issue is not now before us. The fact is that Blackwell is no longer here. The Maryland (Criminal) Court's authority to act under § 9-303 (b) expired when Blackwell recrossed the Potomac River, and thus removed himself from the reach of Maryland's sovereignty. The Attorney General's remedy, if he has one, is to proceed in the Virginia court. Even if the Attorney General is correct in his interpretation of the Virginia summons, the authority to enforce that summons now rests exclusively with the court that issued it, as Va. Code, § 19.2-276 and its Maryland counterpart (§ 9-302 (d)) make clear.

The Criminal Court of Baltimore was correct in denying the Attorney General's motion to compel. It had no jurisdiction to do otherwise.

> *In No. 1586, order denying motion to compel affirmed, appellant to pay the costs; in No. 1618, appeal dismissed, appellant to pay the costs.*