499 A.2d 209

**William R. GRECO**

v.

**STATE of Maryland.**

**No. 171, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Nov. 6, 1985.

Certiorari Granted Jan. 30, 1986.

**58**

William W. Cahill, Jr. (Thomas C. Morrow, William K. Meyer and Weinberg and Green, on brief), Baltimore, for appellant.

Gary E. Bair, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee.

Argued before GILBERT, C.J., and WILNER and ADKINS, JJ.

GILBERT, Chief Judge.

The Saturday motion picture cliff-hanger "Western serials" of the 1930's ofttimes consisted of many exciting episodes. Those serials may have been the inspiration for the instant case, *William R. Greco v. State of Maryland,* because in one form or another this matter has appeared in the appellate courts at least nine times.[1]

---

1. The precursors of this appeal, including the hospital and the nursing home, as well as employees, are: *In re Special Investigation No. 249,* 296 Md. 201, 461 A.2d 1082 (1983); *In re Special Investigation No. 244,* 296 Md. 80, 459 A.2d 1111 (1983); *In re Special Investigation No. 227,* 55 Md.App. 650, 466 A.2d 48, *cert. denied,* 297 Md. 417 (1983); *In re Special Investigation No. 237,* 54 Md.App. 201, 458 A.2d 450, *cert. denied,* 296 Md. 414 (1983); *In re Special Investigation No. 228,* 54 Md.App. 149, 458 A.2d 820, *cert. denied,* 296 Md. 414 (1983); *In re Special Investigation No. 224,* 54 Md.App. 137, 458 A.2d 454, *cert. denied,* 296 Md. 414 (1983); *In re Special Investigation, No. 202,* 53 Md.App. 96, 452 A.2d 458 (1982); *In re Special Investigation No. 219,* 52 Md.App. 17, 445 A.2d 1081 (1982).

This appeal had its genesis in the attorney general's investigation into Medicaid fraud at a Prince George's County hospital, as well as a closely related nursing home.

In what may prove to be the final chapter in this serial, we are asked to determine:

I. Whether the prosecution for the offense of Medicaid fraud was barred by the passage of time.

II. Whether the trial court erred in refusing to enter a judgment of acquittal despite Greco's claim that the State failed to prove that the alleged offense occurred in Baltimore City.

III. Whether the trial court erred in entering an order of restitution, notwithstanding Greco's acquittal on all counts of unlawful receipt of money, goods or services.

Before deciding the issues put to us by Greco, we shall first relate the factual predicate from which this case arose.

The newly created Medicaid Fraud Control Unit of the Office of The Attorney General began an investigation in August 1981 concerning suspected large-scale fraud on the part of a closely related hospital and nursing home, and its employees, owners, and administrators. Dr. William R. Greco, the administrator and co-owner of the nursing home, was the target of the probe. The direct result of the percontation was that Dr. Greco was indicted by the Grand Jury of Baltimore City. The indictment as handed up consisted of six counts of Medicaid fraud, three counts of obtaining money under false pretenses, and one count of theft.

Prior to trial, Greco moved to dismiss the indictment on two grounds: 1) improper venue; and 2) that prosecution was barred by the statute of limitations. A pretrial hearing was held on the motion challenging venue. The Chief of Management and Services for the Department of Health and Mental Hygiene (DHMH), the agency which administers the Medicaid program in this State, testified concerning

procedures for filing and processing statements of reimbursable cost.

We glean from the record that the system entails ongoing reimbursement based on the health care provider's estimate of total reimbursable cost for a given year, with a subsequent adjustment based on the actual cost incurred during that year. In order for the system to function properly, the health care provider must submit two annual cost reports: an Interim Rate Calculation (IRC), and a Statement of Reimbursable Cost (SRC). An IRC is a statement of projected reimbursable cost, while the SRC is a statement of actual cost incurred.

During the period covered by the indictment, both the IRC and the SRC were to be filed with Hospital Cost Analysis Services (HCAS) located in Baltimore County. HCAS is or was a private business that contracted with the State to audit IRCs and SRCs that were submitted by nursing homes. Its function was to collect and review the information submitted by certain health care providers and to recommend to DHMH a per diem payment rate per patient. It was DHMH's responsibility to conduct a patient census at the various health care facilities and to enter that information, along with the payment rate, into its computer so as to determine the amount of money payable to each facility.

After considering the testimony adduced at the hearing, the trial judge determined that venue was proper in Baltimore City. He denied Greco's motion. The judge also ruled that the action brought against Greco was not barred by limitations.

Following a nonjury trial, Greco was convicted on six counts, namely: a false statement in SRCs for the years 1977 (Count 1), 1978 (Count 2), and 1979 (Count 3); a false statement in IRCs for the years 1978 (Count 4), 1979 (Count 5), and 1980 (Count 6). Dr. Greco was acquitted of the remaining counts which included three charges of obtaining money by false pretenses and one count of theft.

The doctor was sentenced to concurrent five year terms of imprisonment on each of the six counts of Medicaid fraud. All but eighteen months of the sentence were suspended. Dr. Greco was also required to perform eighteen months of community service, and was fined $60,000. Additionally, the doctor was ordered to pay to the State $50,000 as restitution. Aggrieved by the convictions and resulting sentences, Greco noted this appeal.

Any additional facts necessary for a better understanding of a particular issue will be supplied during the course of the particular discussion.

I. *Is the prosecution barred by statute of limitations?*

Dr. Greco contends that his convictions on the Medicaid fraud counts must be reversed because the prosecution for those offenses was not initiated within three years of the crimes. The statute upon which Greco bottoms his argument is Md.Cts. & Jud.Proc.Code Ann. § 5–106. That section provides:

"Prosecution for misdemeanor.

(a) One year.—Except as provided by this section, a prosecution for a misdemeanor not made punishable by confinement in the penitentiary by statute shall be instituted within one year after the offense was committed.

(b) Two years.—A prosecution under the vehicle code shall be instituted within two years after the offense was committed if the charge is:

(1) Unlawfully using a driver's license; or

(2) Fraudulently using a false or fictitious name when applying for a driver's license.

(c) Thirty days.—A prosecution for Sabbath breaking or drunkenness shall be instituted within 30 days after the offense was committed.

(d) Same.—Prosecution for selling alcoholic beverages in Allegany County.—In Allegany County, a prosecution for selling alcoholic beverages to a person under the legal age for drinking such alcoholic beverages or for selling

alcoholic beverages after hours shall be instituted within 30 days after the offense was committed.

(e) *Offenses under election laws or conflict of interest laws, criminal malfeasance, misfeasance or nonfeasance.* —A prosecution for the commission of or the attempt to commit a misdemeanor constituting: (1) a criminal offense under the State election laws; or (2) a criminal offense under the State conflict of interest laws; or (3) criminal malfeasance, misfeasance, or nonfeasance in office committed by an officer of the State, or of an agency of the State, or of a political subdivision of the State, or of a bicounty or multicounty agency in the State shall be instituted within two years after the offense was committed.

(f) *Conspiracy to commit offenses enumerated in subsection (e).* —A prosecution for conspiracy to commit any of the offenses enumerated in subsection (e) shall be instituted within two years after the offense was committed.

(g) *Welfare fraud.* —A prosecution for a welfare offense under Article 27, § 230A of the Code shall be instituted within three years after the offense was committed. . . .

(h) *Medicaid fraud.* —A prosecution for the offense of Medicaid fraud under Article 27, § 230B of this Code shall be instituted within 3 years after the offense was committed. (1980, ch. 97.)"

Greco maintains that although the statute as a whole appears to apply only to misdemeanors, subsection (h) is applicable to felonies. Proceeding from that premise, Greco states that even though he was charged with six counts of *felony* Medicaid fraud, prosecution of those offenses was barred by limitations. To reach that conclusion, one has to divorce subsection (h) from the statute as a whole and consider it as an independent provision totally unrelated to the purported subject of § 5–106, "Prosecution for misdemeanor."

The caption to § 5–106 takes on particular significance inasmuch as that caption was a part of the original enactment.[2] The Court of Appeals in *Smelser v. Criterion Ins. Co.*, 293 Md. 384, 386–87 n. 2, 444 A.2d 1024, 1026 n. 2 (1982), made crystalline that:

"Code (1957, 1981 Repl.Vol.) Art. 1, § 18, as enacted by Ch. 196 of the Acts of 1961, providing that '[t]he captions or headlines of the several sections of th[e] Code which are printed in bold type, and the captions or headlines of the several subsections ... which are printed in italics ..., are intended as mere catchwords to indicate the contents of the sections and subsections' and 'are not to be deemed or taken as titles of the sections and subsections, or as any part thereof,' *is not applicable in this instance since the captions are found in the original enactment of § 543 by Ch. 73 of the Acts of 1972.*" (Emphasis supplied.)

When § 5–106 is read in the light of *Smelser*, it is perspicuous that the statute was intended to apply to misdemeanors and only to misdemeanors. It has no application whatsoever to felonies. Consequently, the passage of the three years between the last fraudulent act and the return of the indictment does not bar prosecution. Generally,

---

**2.** Ch. 2 of the Acts of 1973 Special Session, now codified as Md.Cts. & Jud.Proc.Code Ann. § 5–106, provides:

"*Sec. 5–106.   Prosecution for Misdemeanor.*
(A) One year.
Except as provided by this section, a prosecution for a misdemeanor *not* made punishable by confinement in the penitentiary by statute shall be instituted within one year after the offense was committed.
(B) Two years.
A prosecution under the vehicle code shall be instituted within two years after the offense was committed if the charge is:
(1) unlawfully using a driver's license; or
(2) fraudulently using a false or fictitious name when applying for a driver's license.
(C) Thirty days.
A prosecution for Sabbath breaking or drunkenness shall be instituted within 30 days after the offense was committed." (Emphasis supplied.)

there is no statute of limitations on felonies committed in and contrary to the laws of this State. *Smallwood v. State,* 51 Md.App. 463, 467, 443 A.2d 1003, 1006 (1982).

The amendment to § 5–106 by the enactment of Ch. 97 of the Laws of 1980 does not, as Greco asserts, alter the application of *Smelser* to the instant case. Indeed, Ch. 97 declared that it was,

> "FOR the purpose of *amending* the statute of limitations for medicaid fraud; ...
>
> BY *adding* to
>> Article—Courts and Judicial Proceedings
>> Section 5–106(h)
>> Annotated Code of Maryland
>> (1974 Volume and 1979 Supplement)"

(Emphasis supplied.)

We think it beyond question that subsections (b) through (h) of § 5–106 are statutorily created exceptions to the one year statute of limitations generally applicable to commencement of prosecution for misdemeanors.

■ If, as we herein hold, Courts Art. § 5–106 does not bar prosecution for felony Medicaid fraud, what, if any, period of limitations applies? The answer, of course, is none. Maryland, as we said in *Smallwood v. State,* 51 Md.App. at 467, 443 A.2d at 1006, does not recognize a period of limitations in felony cases. In this State a prosecution for a felony "may be instituted anytime during the life of the offender." [3] *Smallwood v. State,* 51 Md.App. at 468, 443 A.2d at 1006, quoting Hochheimer, *Law of Crimes and Criminal Procedure,* § 87 (1897).

The trial judge did not err in rejecting Greco's attempted interposition of the statute of limitations.

---

**3.** The prosecution may be brought to an abrupt halt by certain constitutional barriers, but not by any statute or period of limitations.

## II. *Was venue proper in Baltimore City?*

Greco vigorously attacks the trial judge's ruling that Baltimore City was the proper venue for the trial of this case. Counsel for Greco strenuously asseverated that Greco's convictions must be reversed because the State failed to demonstrate that the offenses occurred in Baltimore City. The attorney for Greco argued that the SRCs and IRCs were sent for auditing to HCAS, which is or was located in Baltimore County. Hence, it is contended that it was where the SRCs and IRCs were audited that the crimes, if any, occurred.

"Venue," Judge Thompson wrote for this Court in *Stewart v. State*, 21 Md.App. 346, 348, 319 A.2d 621, 622 (1974), *aff'd*, 275 Md. 258, 340 A.2d 290 (1975), "refers to a particular place or county in which a court of appropriate jurisdiction may properly hear and determine the case in the first instance."

"At common law criminal offenses were tried by a jury of the county where the offense was committed." *Kisner v. State*, 209 Md. 524, 529, 122 A.2d 102, 105 (1956), citing 4 Blackstone's *Commentaries* * 303. Although the Constitution of Maryland is silent as to venue, Maryland follows the common law rule that the proper venue of a crime is the county where it was committed. *McBurney v. State*, 280 Md. 21, 371 A.2d 129 (1977). "It is widely recognized ... that in the absence of any limitation by constitutional provision, the power of the legislature to fix the venue of criminal prosecution in a county other than that in which the crime was committed is unrestricted." *McBurney*, 280 Md. at 32, 371 A.2d at 135.

The Maryland General Assembly has not seen fit to specify any particular venue with respect to Medicaid fraud cases. Therefore, the common law rule prevails. Having said that, we now turn to the question of where was the offense committed: Prince George's County, Baltimore County or Baltimore City.

Greco, as we have said, was indicted on six counts of Medicaid fraud (Md.Ann.Code art. 27, § 230C); three counts of obtaining money under false pretenses (Md.Ann.Code art. 27, § 140); and one count of theft (Md.Ann.Code art. 27, § 342).

The crux of Greco's argument relative to venue is that because the offenses proscribed by § 230C took place wholly outside Baltimore City, venue was not proper in Baltimore City.

Greco was accused of Medicaid fraud as specifically defined by Md.Ann.Code art. 27, § 230B(b)(1) and (2):

"(1) Knowingly and wilfully making or causing to be made any false statement or representation of a material fact in any application for any benefit or payment under a State plan established by Title XIX of the Social Security Act of 1939;

(2) Knowingly and wilfully making or causing to be made any false statement or representation of a material fact for use in determining rights to those benefits or payments...."

This Court, in *Roderick v. State,* 9 Md.App. 120, 125, 262 A.2d 783, 786 (1970), said that a crime perpetrated by fraud is a specific intent crime irrespective of whether the word "intent" is embraced within the definition of the offense. *See* Perkins, *Criminal Law* (2d ed. 1969), p. 765. Courts have been reluctant to define fraud with any degree of preciseness. Nevertheless, it is safe to say that fraud includes the knowing and wilful making of a false statement or false representation of a material fact with the intent and for the purpose of having another rely upon that false statement or false representation to his or her detriment. *Suburban Properties Management, Inc. v. Johnson,* 236 Md. 455, 460, 204 A.2d 326, 329 (1964); *Appel v. Hupfield,* 198 Md. 374, 84 A.2d 94 (1951). That is the precise situation in the instant case. With the intent of defrauding the State, Greco caused to be prepared SRCs and IRCs that he knew, or should have known, contained

false material statements. When Greco forwarded the SRCs and IRCs to HCAS in Towson, Baltimore County, it was with the continuing intent to defraud the State. HCAS's approval of the SRCs and IRCs and transmittal to DHMH in Baltimore City for payment were in furtherance of Greco's fraudulent scheme to defraud the State. We think it patent that Greco's fraudulent endeavor began in Prince George's County, continued into Baltimore County, and persisted in Baltimore City. The fraud by Greco was a continuing offense that could have been tried in either county or in Baltimore City. *McBurney v. State,* 280 Md. 21, 371 A.2d 129 (1977). That the State opted to prosecute in Baltimore City instead of either of the two counties was its prerogative and furnishes no reason for Greco to complain.

### III. *Was restitution properly ordered?*

Greco's final contention is that the trial court improperly ordered restitution because the judge acquitted Greco of all counts of unlawfully obtaining money from the Medicaid program.

Notwithstanding that the trial judge found that the State had failed to prove that appellant unlawfully received any monies from the Medicaid program, he ordered Greco to make restitution to the State in the amount of $50,000. The judge apparently relied on § 230D(a)(1), which provides:

> "(a) Every person convicted of the crime of Medicaid fraud in which the value of the money, services, or goods involved is $500 or more is guilty of a felony, and shall:
>
> (1) Make full restitution of the money, services, or goods, or the value of those services or goods *unlawfully received* . . . ." (Emphasis supplied.)

■ The trial judge's entry of a verdict of not guilty as to all counts alleging unlawful receipt of money is obviously inconsistent with the order of restitution under § 230D(a)(1). The language of § 230D(a)(1) is clear. Resti-

tution shall be ordered for money, services, or goods "unlawfully received."

"Restitution," according to *Black's Law Dictionary* (5th ed. 1979), is the "[a]ct of restoring ... making good or giving equivalent for any loss, damage or injury...." An order of restitution is a means of making the injured party whole, *i.e.*, restoring him, her or it to the *status quo*. Restitution is not a fine.

The judge, having found as fact that Greco did not unlawfully receive monies from the State in violation of § 230D(a)(1), should not have ordered restitution. We vacate that part of the sentence.

JUDGMENTS AFFIRMED, EXCEPT AS TO THE ORDER TO MAKE RESTITUTION, WHICH IS VACATED. COSTS TO BE PAID BY APPELLANT.