531 A.2d 706

George R. AUD

v.

STATE of Maryland.

No. 98, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Oct. 7, 1987.

510

George R. Sparling, Leonardtown, for appellant.

Stephen Montanarelli, State Prosecutor (Bernard A. Penner and Thomas M. McDonough, Asst. State Prosecutors, on the brief), Towson, for appellee.

Argued before GILBERT, C.J., and BLOOM and ROSALYN B. BELL, JJ.

GILBERT, Chief Judge.

While investigating alleged bribery and other corruption, the State Prosecutor [1] discovered facts which he believed indicated that George R. Aud, a County Commissioner of St. Mary's County, was guilty of filing false Maryland State income tax returns. Subsequently, charges were brought against Aud in the Circuit Court for St. Mary's County. Judge Jacob S. Levin, at a non-jury trial, convicted Aud on two counts of filing false tax returns. Aud was sentenced to concurrent one year terms.

Aggrieved at the results in the circuit court, Aud has carried his cause to Annapolis where he posits an ennead of assertions as to why the judgments should be negated.

We shall discuss each of the issues put to us by Aud, adding any facts that may be necessary to a better understanding of the particular point involved.

## I

*"The State Prosecutor did not have the authority to commence this prosecution."*

Aud's assault on the State Prosecutor's powers to initiate a prosecution is hydra-headed. He asserts:

1) The filing of false income tax returns is not an offense that the State Prosecutor is empowered to prosecute.

2) Since the statute requires that the local State's Attorney has 45 days in which to consider bringing the

---

1. The office of the State Prosecutor was established by Laws 1975, Ch. 255, now codified as Md. Ann. Code art. 10, § 33A–F.

charges, commencement of the prosecution before the expiration of the 45 days vitiates the charges, irrespective of the local prosecutor's waiver.

The State Prosecutor's initial sojourn into Aud's activities was commenced as a result of alleged bribery.[2] During the course of that probe, the State Prosecutor "planted" an undercover State Police officer in St. Mary's County with the apparent instruction to cultivate a friendship with Aud. The trooper, to use the vernacular, was "wired." Certain conversations between him and Aud contained the latter's magniloquence about income tax evasion. Those boasting statements led the State Prosecutor to write to then Governor Harry R. Hughes:

> "As you are aware, the State Prosecutor's Office, in conjunction with the St. Mary's County Grand Jury, has been investigating allegations of bribery, misconduct in office, and ethics in government violations by certain St. Mary's County elected and appointed officials.
>
> During the course of this investigation, my office has come into possession of information which leads me to believe that certain officials in St. Mary's County have been and are currently violating Maryland's income tax and gambling laws.
>
> The alleged income tax evasion appears to be inextricably associated with matters which are currently under investigation by my office in St. Mary's County. It is my opinion that this matter should be thoroughly investigated as an alleged substantive offense."

The Governor responded:

> "You have advised me that information has been received by your office that indicates the possibility of criminal conduct with respect to certain elected and appointed officials of St. Mary's County. This information

---

**2.** The State Prosecutor is empowered by Md. Ann. Code art. 10, § 33B(b)(3) to investigate and prosecute "[v]iolations of the State bribery law in which an official of ... a political subdivision ... was the offerer or offeree, or intended offerer or offeree, of a bribe."

was discovered in the course of an ongoing investigation by your office of possible misconduct and bribery in St. Mary's County.

In accordance with your request, and pursuant to the provisions of Article 10, Section 33B(c) of the Annotated Code of Maryland, I hereby direct you to expand the investigation previously authorized to include the allegations of criminality referred to above and more fully described in your letter."

■ The statute empowers the Governor to authorize the State Prosecutor to "investigate criminal activity conducted or committed ... in more than one political subdivision of the State." Md.Ann.Code art. 10, § 33B(c). Obviously, the first question to be resolved is whether income tax fraud is committed in "more than one political subdivision of the State." This Court in *Greco v. State,* 65 Md.App. 56, 499 A.2d 209 (1986), *aff'd,* 307 Md. 470, 515 A.2d 220 (1986), said that fraud is "a continuing offense." We specifically noted in *Greco* that the mailing of a fraudulent Medicaid claim could be prosecuted in the place the intent was formed, the place to which the claim form was mailed, or the place to which the form was ultimately sent for payment. There is no difference in the fraudulent intent employed in Medicaid fraud and that in income tax fraud. Consequently, the *Greco* rationale applies. Aud could have been prosecuted in St. Mary's County where he formulated the intent to defraud the State, or in Charles County from which he apparently mailed the tax return to the Comptroller's office, or in Anne Arundel County where the return was actually received by the Comptroller of the Treasury. Any one of those three geographical locations would have sufficed as a proper venue for trial. Since the fraud continued from St. Mary's County to Charles County to Anne Arundel County, it was unmistakably multi-county in nature and manifestly within the scope of the State Prosecutor's authority to prosecute.

Aud, in the second prong of his initial attack on the circuit court's judgments, contends that the State's Attorney of St. Mary's County could not waive all or any part of the forty-five day notice that Md. Ann. Code art. 10, § 33B(e) requires the State Prosecutor to furnish the local State's Attorney before the State Prosecutor may commence a prosecution. The statute provides in pertinent part:

> "... If the State's Attorney within 45 days after receipt of the State Prosecutor's findings and recommendations fails to file charges and commence prosecution in accordance with the recommendations, the State Prosecutor may prosecute those criminal offenses as set forth in his investigative report and recommendations."

The State Prosecutor wrote to the St. Mary's County State's Attorney under date of May 14, 1986, recommending that Aud be charged with a series of offenses including "2 counts of False Income Tax Return [Md.Ann.Code] Article 27, Section 302." The next day, May 15, 1986, the State's Attorney replied that he authorized the State Prosecutor "to proceed ... pursuant to [Md.Ann.Code] Article 10, Section 33B(e)."

On the same day the Grand Jury for St. Mary's County returned three indictments against Aud. Those three indictments charged, respectively, the offenses of bribery, tax fraud, and perjury. Aud was acquitted of the bribery. On oral argument we were told that Aud was placed on probation before judgment insofar as the perjury charge was concerned. The tax fraud indictment was dismissed on the ground that the State's evidence was illegally obtained. None of those indictments is the subject of this appeal.

Shortly after the trial on those three indictments, the State Prosecutor sought and obtained a new indictment of Aud on the basis of fraudulent income tax returns. It is the convictions on that indictment that are the subject of this appeal.

The thrust of Aud's argument is that the State Prosecutor is compelled by the statute to *wait* forty-five days after notification to the local State's Attorney before commencing a criminal prosecution if the offense is one that is within the prosecutorial powers of the local prosecutor. Aud reads § 33B(e) as establishing a minimum, fixed, inflexible time frame with which the State Prosecutor must comply irrespective of whether the local State's Attorney waives or sanctions a lesser time period. The forty-five day waiting period was placed in the statute to afford local State's Attorneys an opportunity to conduct the prosecution. It was, in essence, a measure that was apparently designed to prevent local prosecutors from being placed in an embarrassing or inferior position to the State Prosecutor in matters in which the local prosecutor exercised concurrent jurisdiction. Nothing in the statute proscribes the local State's Attorney from exercising the prerogative of permitting the State Prosecutor to proceed with the matter without the necessity of waiting forty-five days. Indeed, any number of pragmatic reasons, both economic or political, may dictate that decision.

## II

*"The Circuit Court for St. Mary's County was not the proper venue for the indictment herein and trial thereon."*

We have previously discussed the reasons why the indictment and trial were properly brought in St. Mary's County, i.e. fraud is a continuing offense. *Greco v. State, supra,* is dispositive of the issue.

## III

*"There was not sufficient evidence of venue to sustain a conviction."*

We think this issue is so inextricably interwoven with issue II as to be one and the same. It is, in short, an

"instant replay" of that issue with the same disposition, and no further discussion is necessary.

## IV

### *"The court erred in denying the appellant's motion for a protective order."*

■ Aud asserts that he was materially prejudiced because the State Prosecutor failed to comply with Md. Rule 4–263(a).[3] He avers that the trial court erroneously refused to compel discovery of certain surreptitiously recorded conversations.

The chief aim of Md. Rule 4–263 is "to assist the defendant in preparing a defense and to afford protection from surprise." *Russell v. State,* 69 Md.App. 554, 564–65, 518 A.2d 1081, 1086 (1987). When Aud filed his motion for protective order, he had already had the occasion to hear extensive testimony by the undercover trooper who had surreptitiously recorded the conversations between Aud and himself. Moreover, prior to the hearing on the motion for a protective order, the State Prosecutor supplied Aud with copies of *all* recordings that had been made of the conversations between Aud and the undercover trooper. Aud obtained a transcript of the trooper's grand jury testimony as well as the personal notes the trooper used during that testimony. Additionally, Aud was furnished with *all* the recorded conversations available to the State Prosecutor, irrespective of whether they were relevant or irrelevant to the tax fraud charges. Moreover, the recordations were turned over to Aud in ample time to prepare a defense. He

---

3. Md. Rule 4–263(a) provides:
 "Without the necessity of a request, the State's Attorney shall furnish to the defendant:
 ....
 (2) Any relevant material or information regarding: (A) specific searches and seizures, wire taps, or eavesdropping, (B) the acquisition of statements made by the defendant to a State agent that the State intends to use at a hearing or trial, and (C) pretrial identification of the defendant by a witness for the State."

received all there was to get; there was nothing more. Hence, the State Prosecutor complied with Rule 4–263(a), and Judge Levin properly denied Aud's motion for the protective order.

## V

*"The court erred in denying the appellant the opportunity to examine witnesses in support of the motion to dismiss."*

 Prior to trial in the instant case, Aud filed a motion to dismiss the indictment. At the hearing on that motion, the judge told Aud that he had forty-five minutes in which to present evidence in support of the motion. Aud was further advised that there would be no time limitation on his argument on the motion. Aud called two witnesses[4] and requested from them the same information that had already been presented to the court on the motion to suppress the wiretap evidence. Aud's argument for dismissal was bottomed on the theory that the grand jury's tax fraud indictment[5] was grounded on evidence obtained in violation of the Md. Electronic Surveillance laws. Md. Cts. and Jud. Proc. Code Ann., § 10–401, *et seq.* He was unable to elicit evidence which supported his contention. In this Court, Aud, pointing to *Lewis v. State*, 71 Md.App. 402, 526 A.2d 66 (1987), as authority, asseverates that the time limitation imposed by the trial judge on the presentation of evidence is a patent abuse of discretion. We have a different view. *Lewis* holds that, in the absence of a sufficient factual basis, the setting of a time limit on a defendant's cross-examination is an abuse of discretion. Judge Levin, as a result of having heard the same evidence at the hearing on

---

4. The witnesses were the investigating undercover state trooper and the Deputy State Prosecutor.

5. Aud, as we have seen, was indicted twice by the St. Mary's County Grand Jury. The first indictment of May 15, 1985, was dismissed August 5, 1985. He was re-indicted August 26, 1986, on the same charges which are the subject of this appeal.

the motion to suppress, had already accumulated a sufficient factual basis for the justifiable exercise of his discretion. *Beasley v. State,* 271 Md. 521, 535, 318 A.2d 501, 508 (1974). It was not an abuse of discretion to refuse to rehear the testimony he had previously heard.

## VI

*"The court erred in admitting testimony as to conversations illegally intercepted and recorded."*

Aud asserts that evidence obtained from an illegal electronic interception was admitted at trial, but he is incorrect. Although there was clearly an illegal electronic interception of an oral communication, evidence obtained therefrom was not introduced at trial, nor was it the basis of the instant indictment.

The record reveals that after a "strategy session" with the State Prosecutor's office, an undercover trooper, without prior judicial approval, recorded a conversation involving himself, Aud, and another person, Mr. Tinsley. That interception, absent the consent of all of the parties to the conversation was unlawful. Courts Art., § 10–402(c)(3); *see also* R. Gilbert, *A Diagnosis, Dissertation, and Prognosis of Maryland's New Wiretap and Electronic Surveillance Law,* U.Balt.L.Rev., Vol. 8, No. 2 (1979), pp. 194. Needless to say, the trooper did not have the consent of all of the parties. In fact, he had the consent of none save himself. There are, however, instances where an enforcement officer may surreptitiously intercept and record oral communications notwithstanding the absence of judicial approval or the consent of all the parties. *See* Courts Art., § 10–402(c)(2).[6]

---

6. "It is lawful under this subtitle for an investigative or law enforcement officer acting in a criminal investigation or any other person acting at the prior direction and under the supervision of an investigative or law enforcement officer to intercept a wire or oral communication in order to provide evidence of the commission of the offenses of murder, kidnapping, gambling, robbery, any felony

The trooper testified before the first grand jury [7] that the entire conversation was initiated by himself in order to gain a recording relating to the income tax charges.

Income tax fraud, however, is not one of the enumerated crimes for which the Legislature has permitted the police to intercept communications or conversations *sans* a warrant or consent. *See* Courts Art., § 10–402(c)(2). Because of the unlawful interception, the trial court dismissed the first tax fraud indictment. When he appeared before the second grand jury, the State Prosecutor did not offer any evidence that the illegal recordings had been made. Instead, he elicited the testimony of the trooper and of Mr. Tinsley concerning their conversation with Aud. The same tactics were repeated at trial. Both witnesses testified to what they personally heard.

■■ Courts Art., § 10–405 provides:

"Whenever any wire or oral communication has been intercepted, no part of the contents of the communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of this State, or a political subdivision thereof if the disclosure of that information would be in violation of this subtitle."

---

punishable under the "Arson and Burning" subheading of Article 27, bribery, extortion, or dealing in controlled dangerous substances, including violations of Article 27, § 286B or § 287A, or any conspiracy or solicitation to commit any of these offenses, or where any person has created a barricade situation and probable cause exists for the investigative or law enforcement officer to believe a hostage or hostages may be involved, where the person is a party to the communication or one of the parties to the communication has given prior consent to the interception."

7. As we have seen, there were two grand juries involved in this case. The indictment handed up by the first grand jury concerning Aud's income tax evasion was dismissed because of the illegal body wire recordings.

Aud asserts that because the conversation among himself, the trooper, and Tinsley was unlawfully electronically intercepted the trooper and Tinsley are, *ipso facto*, precluded from testifying as to what they personally heard Aud say.

We think Aud's interpretation of the statute is too broad. Neither the Fourth Amendment, the Omnibus Crime Control and Safe Streets Act of 1968,[8] nor the Maryland Electronic Surveillance and Wiretap Law [9] protect a person from the possibility that one in whom he or she confides will violate that confidence. *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). Having heard Aud's braggadocio concerning income tax evasion, the State Trooper and Tinsley were free to testify from memory as to the content of those incriminating statements. We hold that the fact that, while he was hearing Aud's inculpatory utterances, the trooper was contemporaneously illegally recording the conversation does not bar admission of the trooper's testimony concerning his auditory reception of the conversation even though it does preclude the admission of the recording of that communication.

Although this Court does not appear to have heretofore decided this precise issue, a number of other states have addressed the question and have reached the same conclusion. *See e.g. Odom v. State*, 403 So.2d 936 (Fla.1981); *People v. Gervasi*, 89 Ill.2d 522, 61 Ill.Dec. 515, 434 N.E.2d 1112 (1982); *People v. Porcelli*, 25 Ill.App.3d 145, 323 N.E.2d 1 (1974); *Commonwealth v. Jarabek*, 384 Mass. 293, 424 N.E.2d 491 (1981); *People v. Beavers*, 397 Mich. 554, 227 N.W.2d 511 (1975); *State v. Armstrong*, 547 P.2d 170 (Or.App.1976); *State v. Waste Management of Wisconsin, Inc.*, 81 Wis.2d 555, 261 N.W.2d 147 (1978); *State v. Smith*, 72 Wis.2d 711, 242 N.W.2d 184 (1976). *Contra State v. Williams*, 94 Wash.2d 531, 617 P.2d 1012 (1980).

---

**8.** Pub. L. No. 90–351, 82 Stat. 212 (1968) (codified at 18 U.S.C. §§ 2510–2520 (1976)).

**9.** Courts Art., §§ 10–401 to 10–413 incl.

Furthermore, Tinsley, who was neither a State agent nor a consenting party to the recordation of the conversations, would not be barred from testifying as to what he heard. Whatever illegal act the trooper may have performed is not imputable to Tinsley.

## VII

*"The court erred in denying the motion to dismiss with respect to evidence obtained by interception of oral communications."*

Having addressed and decided this subject in the preceding issue, we see no need to repeat the journey even though Aud poses it in a sort of reverse angle replay.

## VIII

*"There was insufficient evidence to sustain the convictions."*

The appropriate test for determining whether evidence is sufficient to support a conviction is whether "after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Sloan v. State*, 70 Md.App. 630, 639–640, 522 A.2d 1364, 1369 (1987).

Let us briefly review the evidence before the trial court: Tinsley, a painter, testified that Aud solicited a written paint estimate for work that Tinsley never performed. Aud wanted the estimate "to help with his taxes." The estimated amount was claimed by Aud in his 1984 tax return as an expense of painting a property. Another witness, Mr. Guy, an excavator, testified that Aud, to claim "a tax write-off," asked for a receipt for excavation work that was never done. Notwithstanding that the work was not performed, Aud claimed the expenses on his original 1984 return. Shortly after the State Prosecutor questioned

Aud directly about the deductions, Aud filed an amended return eliminating the expenses for excavation and painting. A number of witnesses testified that the property for which Aud had claimed extensive excavation expenses displayed no indicia of significant changes from its original condition. We think that evidence was more than sufficient to permit the convictions. The judge could find an intent to defraud on the part of Aud.

## IX

*"The court erred in denying relief based on the failure of the State to provide appellant's counsel, at the end of direct examination by the State, with copies of prior statements and testimony by the witness."*

Aud maintains that his due process rights were violated because certain pre-trial oral statements of a State's witness were not furnished his counsel until immediately before cross-examination. Prior to his testimony before the grand jury, Edward Wettenzel, the individual who purchased a parcel of land from Aud for $200,000, was interviewed by the State Prosecutor's office on at least three separate occasions. Wettenzel did not sign a statement, but the interviewer took notes during the questioning. Wettenzel's grand jury testimony encompassed three days, but the State Prosecutor had only one day of the testimony recorded and transcribed. At trial, during direct examination but before cross-examination, the State Prosecutor supplied Aud's counsel with a transcript of that single day's grand jury testimony.

■ Unquestionably, under Maryland law, denying defense counsel a copy of a witness's *written* statement prior to the commencement of cross-examination amounts to a denial to the defendant of due process of law. *Carr v. State,* 284 Md. 455, 473, 397 A.2d 606, 614–615 (1979). The error is not cured by allowing the court to review the written statement in order to determine its usefulness, *Leonard v. State,* 46 Md. 631, 638–39, 421 A.2d 85, 89

(1980), *aff'd*, 290 Md. 295, 429 A.2d 538 (1981), inasmuch as that judgment is for defense counsel to make, not the court.

■ In the case at bar, Wettenzel neither signed nor made a written statement. Consequently, *Carr* and *Leonard* are inapposite. Aud, however, advances the argument that the notes taken by the State Prosecutor during his interviews with Wettenzel are controlled by *Carr*. We disagree. The State is not required to produce investigator's interview notes. *Whitehead v. State*, 54 Md.App. 428, 441, 458 A.2d 905, 911 (1983). Even "extensive" notes, as Wettenzel characterized the State Prosecutor's note taking, lack the completeness necessary to elevate them to the status of a written statement.

■ If the grand jury testimony had been recorded and transcribed, *Jones v. State*, 297 Md. 7, 22, 464 A.2d 977, 984 (1983), mandates that a defendant must be given access to the transcript for purposes of cross-examination. *Garrett v. State*, 59 Md.App. 97, 107, 474 A.2d 931, 936 (1984). *Jones*, however, does not require grand jury testimony to be recorded. Patently, if there is no recordation of that testimony, it cannot be produced; and a defendant's due process rights are not thereby denied.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY THE APPELLANT.