FRANCIS T. DeLILLY, JR. *v.* STATE
OF MARYLAND

[No. 307, September Term, 1970.]

*Decided April 28, 1971.*

The cause was argued before MURPHY, C.J., and MORTON and MOYLAN, JJ.

*Thomas V. Miller, Jr.,* for appellant.

*William E. Brannan, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *E. Allen Shepherd, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

On the evening of January 15, 1968, Mr. and Mrs. Clifton Jackson were at their home in Accokeek, Maryland with their three foster sons and Mrs. Jackson's aunt, Mrs. Evelyn Matthews. At about 7:00 p.m. four men came into their house on the pretext that they wished to use the Jackson phone. Once inside, one of the men drew a pistol and forced the family to lie on the floor. Two of the men then raped Mrs. Jackson. Mrs. Matthews was assaulted and her clothing torn from her body. The house was ransacked. A number of items of personal property were stolen. Mrs. Jackson was robbed of her purse. The men then fled.

From a number of photographs shown to them by the police shortly after the crime, Mr. and Mrs. Jackson identified appellant as one of the persons who entered their home and raped Mrs. Jackson. Thereafter, appellant was apprehended and charged with rape, burglary, and armed robbery. A jury in the Circuit Court for Prince George's County found him guilty of those offenses after Mr. and Mrs. Jackson positively identified him as one of the criminal agents; he was sentenced to a total of forty years imprisonment. On appeal, he contends that the trial court committed reversible error when it refused to permit him to cross-examine Mr. and Mrs. Jackson, and other witnesses, with respect to a prior misidentification made by the Jacksons of another man charged with, and tried for, the same offenses.

The pertinent facts are these: At the trial, Mr. Jackson made an in-court identification of the appellant as one of the criminal agents, no objection being made thereto by appellant. On cross-examination, Jackson testified with respect to the participation of another man in the crimes, identifying him as Charles Alston, one of the men who raped Mrs. Jackson. He stated that he had identified Alston from a photograph shown to him by police shortly after the crimes were committed, at a police lineup, and also had made an in-court identification of him at Alston's earlier trial for the same offenses with which appellant was charged. Jackson testified that while he had no doubt that Alston was one of the men involved in the crimes, his wife was unable to recognize him as one of her assailants. At this point, appellant undertook to establish by further cross-examination of Jackson that during the Alston trial Jackson had asked the prosecutor to drop the charges against Alston because, although he had previously identified Alston, neither he nor his wife were then positive that Alston was one of the guilty men. Appellant advised the court that he intended to impeach the weight and credibility of Jackson's in-court identification of him by showing the fact of Jackson's earlier misidentification of Alston. Appellant proffered to show that

Jackson made an earlier identification of Alston as one of the four criminal agents, but had repudiated it during the course of Alston's trial and as a result the charges against Alston were dropped. The court refused to permit appellant to cross-examine Jackson on this point and suggested that he call the prosecutor as his witness to prove the substance of his proffer.

Mrs. Jackson also testified for the State and without objection made an in-court identification of appellant as one of her assailants. On cross-examination she stated that she had picked out appellant's photograph but had never identified any photograph of Alston. She testified that she had not identified Alston at the lineup, and did not identify him at his trial. Appellant then attempted to show through further cross-examination of Mrs. Jackson that she previously had so identified Alston, but had repudiated her identification during the trial and asked the State's Attorney to dismiss the charges against Alston. Appellant advised the court that it was his purpose to discredit Mrs. Jackson's in-court identification of him as one of her attackers by showing her prior misidentification of Alston. The court refused to permit appellant to cross-examine Mrs. Jackson on this point.

One of the investigating police officers, Detective Thomas Reilly, testified that in addition to identifying appellant's photograph, both Mr. and Mrs. Jackson identified Alston by his photograph, as had one of their foster children. Reilly testified that Mr. Jackson had also identified Alston at a lineup and that Mrs. Jackson made a tentative identification of him at the lineup.

The appellant called the prosecutor at the earlier Alston trial as his witness. He attempted to show through him that Mr. and Mrs. Jackson, after previously having identified Alston as one of their assailants, told him during the course of the Alston trial that Alston had not been involved in the crimes and that as a result the Alston case was dismissed. The court refused to permit the appellant to adduce evidence in proof of his proffer. Detective Reilly was also called as a defense witness to

prove the prior misidentification of Alston by the Jacksons, but the court again refused to permit such evidence.

The Jacksons' three foster children also testified but were unable to make an in-court identification of appellant as one of their four attackers. There was evidence, through the testimony of Detective Reilly, that two of the foster children made an extrajudicial photographic identification of appellant shortly after the crime, and that another of the children had made a photographic identification of Alston as one of the criminals.[1]

Appellant produced several alibi witnesses on his behalf. Their testimony, if believed, tended to show that appellant could not have been involved in the crimes since he was elsewhere when they were committed.

As Mr. and Mrs. Jackson were the only witnesses able to make an in-court identification of appellant, the credibility of their identifications was of crucial importance, not only to the State but also to the defense. Of unquestionable significance in terms of the jury's assessment of the weight and credibility of the Jacksons' identifications of appellant was the fact—if indeed it was a fact—of their retraction of their earlier identification of Alston as one of the men who raped Mrs. Jackson. Appellant's purpose to discredit the Jacksons' in-court identifications of him by showing their misidentification of Alston under similar circumstances was made clear to the court time and again during the course of the trial. Appellant was attempting to convince the jury, at the least, that because of the Jacksons' uncertainty in connection with the Alston identification, their testimony positively identifying him (appellant) should be viewed as equally lacking in certainty, as not being credible, and, therefore, unworthy of belief. We think in the circumstances of this case, the court's limitations upon appellant's efforts to so persuade the jury through cross-examination of the Jacksons, and direct examination of Detective Reilly and the

---

1. Both Mr. and Mrs. Jackson and one of their children identified a photograph of Edward Nance as one of the persons involved in the crime. Nance was subsequently tried and convicted and we affirmed on appeal. See *Nance v. State*, 7 Md. App. 433.

prosecutor in the Alston trial, constituted prejudicial error requiring reversal of the convictions and a remand for a new trial.

We are, of course, mindful of the general rule so frequently cited that the allowance or disallowance of questions on cross-examination is normally left to the sound discretion of the trial judge. But where the limitations imposed by the court upon cross-examination are such as plainly inhibit the ability of the accused to obtain a fair trial, the general rule is manifestly inapplicable. *Shupe v. State,* 238 Md. 307. The real object of cross-examination is "to elicit all the facts of any observation or transaction which has not been fully explained." *Williams v. Graff,* 194 Md. 516, and cases cited at p. 523. That a witness may be cross-examined on such matters and facts as are likely to affect his credibility, test his memory or knowledge or the like, is a fundamental concept in our system of jurisprudence. *Kantor v. Ash,* 215 Md. 285; *Bryant v. State,* 4 Md. App. 572. And cross-examination to impeach, diminish, or impair the credit of a witness is not confined to matters brought out on direct examination; it may include collateral matters not embraced in the direct examination to test credibility and veracity, it being proper to allow any question which reasonably tends to explain, contradict, or discredit any testimony given by the witness in chief, or which tends to test his accuracy, memory, veracity, character, or credibility. 3 Wharton's Criminal Evidence, Sections 870, 871; 58 Am. Jur. *Witnesses* Section 625. Of course, the right to cross-examine effectively necessarily includes the right to place the testimony of a witness in its proper setting to fairly enable the jury to judge its credibility. *Smith v. Illinois,* 390 U. S. 129; *Alford v. United States,* 282 U. S. 687; *Plank v. Summers,* 205 Md. 598.

We noted in *Perkins v. State,* 11 Md. App. 527, and *Bailey v. State,* 6 Md. App. 496, that even where an identification comes into evidence without objection, the accused is nevertheless entitled to cross-examine the identifying witness to bring out the full circumstances sur-

rounding that identification in an effort to affect its weight and the credibility of the identifying witness. We think that under the *Wade—Gilbert—Stovall—Simmons* spate of cases,[2] the full circumstances surrounding the identification of a criminal accused, including other identifications and misidentifications made in the same case which are the product of the same investigation, and made, as here, under similar circumstances, is properly a subject upon which wide latitude should be given the accused in cross-examination. *See Austin v. State,* 253 Md. 313; *Gray v. State,* 10 Md. App. 478; *Jones v. State,* 10 Md. App. 420; *Dorsey v. State,* 9 Md. App. 80; *Miller v. State,* 7 Md. App. 344.

In the present case, appellant was convicted mainly on the basis of the positive in-court identifications made of him by the Jacksons and the believability of their identifications was the key consideration in the case. Not only was appellant unfairly circumscribed in his cross-examination of the identifying witnesses, but his repeated efforts to bring out through direct examination of his own witnesses the relevant evidence of the Jacksons' prior alleged misidentification of Alston compounded the magnitude of the error and made it clearly prejudicial.

> *Judgments reversed; case remanded for a new trial.*

---

2. *United States v. Wade,* 388 U. S. 218; *Gilbert v. California,* 388 U. S. 263; *Stovall v. Denno,* 388 U. S. 293; *Simmons v. United States,* 390 U. S. 377.