492 A.2d 1343

**Guy R. JOHNSON and Gregory J. Pierson**

v.

**STATE of Maryland.**

**No. 1100, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

June 5, 1985.

---

486

Victoria S. Keating, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellants.

Valerie V. Cloutier, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty. for Baltimore City and Warren Brown, Asst. State's Atty. for Baltimore City, Baltimore, on brief), for appellee.

Submitted before MOYLAN, ALPERT and GETTY, JJ.

GETTY, Judge.

This appeal is from judgments of conviction of Guy R. Johnson and Gregory Pierson, entered after a court trial in the Circuit Court for Baltimore City (Karwacki, J.). Appellants were charged with rape, burglary and robbery arising out of an incident involving a brutal attack on an 89 year old woman in her home. They were acquitted of rape but convicted of burglary and robbery. Johnson was sentenced to a total of twenty years imprisonment, and Pierson was sentenced to a total of thirty years imprisonment. Both appellants present the following questions for this Court's review.

1. Did the court err in admitting hearsay statements (A) of a witness who was incompetent at the time of trial, without determining whether or not she was competent at the time of making the statements; and (B) not properly within the "excited utterance exception" to the rule against hearsay?

2. Did the admission into evidence of the hearsay statements deprive appellants of their right to confrontation?

3. Was the evidence sufficient to sustain the charges?

A brief review of the facts presented at trial is necessary. On May 13, 1983, Mary Littleton, then 89 years of age and

living alone, was attacked and robbed in her Baltimore City home. Appellants were charged with the crimes shortly thereafter.

At appellants' trial, Earl Fisher, a neighbor of the victim, testified that on the night of the incident he saw two men, whom he identified as the appellants, walking up the street where both he and the victim lived. Fisher observed appellants looking into the windows of several dwellings and "trying the gate to someone's yard." At one point, Fisher heard Pierson tell Johnson, while pointing to the victim's house, "no not there .. over here, dummy." Fisher stated that he saw appellants enter the victim's yard on two separate occasions that night. Fisher and his wife went for a walk, and one-half hour later they heard that Mrs. Littleton had been attacked and was on her way to a hospital. Fisher testified that the first time he noticed appellants in the victim's yard, five minutes elapsed before he saw them leave; the second time he saw them in her yard, ten minutes elapsed before they departed.

James Creighton, who also lived on the same street as the victim, testified that at 11:30 p.m. on the night of the incident a man, whom he identified as appellant Johnson, approached him and asked him for a cigarette. A short time later, a second man, whom Creighton identified as appellant Piersen, approached Johnson and said, "Come on, she's coming." The victim then came running around the corner. The two men immediately ran away. Creighton testified that the victim ran toward him wearing only an open housecoat. According to Creighton, she was "scared, a little 'lerious,' shaking" and "just a complete nervous wreck." The victim told Creighton she had just been beaten up and robbed. Creighton called the police and later identified Johnson and Pierson from police "mug shots."

Officer Bowen of the Baltimore City Police Department testified that he arrived at the scene of the robbery and spoke with several people including the victim. He stated that the victim was very upset and that she was bleeding

from the ears and from several marks on her face. Bowen related that when he arrived, the victim was yelling that she had been beaten and robbed. He got her "calmed down a bit," and "asked her point blank what happened." She responded that two people jumped her in her home, beat her repeatedly and robbed her.

Bowen also investigated the scene of the crime and found, *inter alia,* that a window in the rear entrance door had been broken. The victim's son testified that the same window had been intact the morning before the robbery. The State's case was concluded with the introduction of a medical report on the victim's condition which included her statement to the treating physician that she had been sexually assaulted as well as beaten during the robbery.

At the beginning of the trial the court was alerted to the fact that the State would not be calling the victim to testify. At that time the victim was ninety years of age and confined to a nursing home. The State conceded that she was incompetent to testify at trial. The State sought to admit several statements made by the victim shortly after the incident under the excited utterance exception to the Hearsay Rule. Defense counsel argued to the trial court that before such statements could be admitted into evidence, it was necessary for the court to determine that the victim was competent (*i.e.,* of sound mind) at the time the statements were made. The court refused to make this inquiry stating that because the statements sought to be admitted were excited utterances, it was immaterial whether the out-of-court declarant was competent at the time of making the statements. We agree with the holding of the trial court, but not for the reasons assigned by the court.

IA Necessity of determining competency of out-of-court declarant at time of making excited utterance.

The rationale for the excited utterance exception to the Hearsay Rule was explained by Dean Wigmore as follows:

"This general principle is based on the experience that, under certain external circumstances of physical shock, a

stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts." 6 *Wigmore on Evidence* § 1751 (3rd Ed.1940).

As more recently analyzed in *McCormick's Handbook of the Law of Evidence* (3d Ed.1984) at 855:

"The rationale for the [excited utterance] exception lies in the special reliability which is regarded as furnished by the excitement suspending the declarant's powers of reflection and fabrication. This factor also serves to justify dispensing with any requirement that the declarant be unavailable, because it suggests that his testimony on the stand, given at a time when his powers of reflection and fabrication are operative, is less reliable than his out-of-court declaration. The entire basis for the exception is, of course, subject to question. While psychologists would probably concede that excitement minimizes the possibility of reflective self-interest influencing the declarant's statements, they would likely question whether this might be outweighed by the distorting effect of shock and excitement upon the declarant's observations and judgment. Despite the doubt concerning its justification, however, the exception is well established." (Footnotes omitted.)

In *Moore v. State*, 26 Md.App. 556 (1975), 338 A.2d 344, we expressly held that testimonial incompetence is not a bar to admitting into evidence spontaneous declarations of a

*young child. Id.* at 561, 338 A.2d 344. We reached a similar result in *Smith v. State,* 6 Md.App. 581 (1969), 252 A.2d 277, and in *Jackson v. State,* 31 Md.App. 332 (1976), 356 A.2d 299.[1]

In *Moore,* we quoted *Wigmore,* Sec. 1751, p. 156, to-wit: "Does the disqualification of *infancy* ... exclude declarations otherwise admissible? It would seem not; because the principle of the present exception obviates the usual sources of untrustworthiness ... in children's testimony; because, furthermore, the orthodox rules for children's testimony are not in themselves meritorious ... and, finally, because the oath-test, which usually underlies the objection to children's testimony, is wholly inapplicable to them."

The case *sub judice* involves an adult admittedly incompetent at the time of trial. Whether the incompetency was due to senility or other causes is not clear from the record. The question then becomes whether the rationale of testimonial incompetency applicable to young children is equally relevant to mental incompetency irrespective of age. McCormick suggests that the excited utterance exception applies to both.

"Must the declarant be shown to have met the tests for competency for a witness? In general, it seems not. The declarant is not usually before the court to be examined as to his competency, and the declarations furthermore come in only under special safeguards—here, the requirement of *excited* utterance—which diminish the need for further caution. Consequently, it is held that evidence of spontaneous declarations of infants is admissible despite the incompetency of the child as a witness. *Such is also the rule in the case of an insane declarant,* or one incompetent by reason of conviction of a felony, or where

---

**1.** In *Moore,* a three and a half year old child said "Daddy did it"; in *Smith* a four year old stated that her "grandfather did it and she didn't like him anymore"; in *Jackson,* a four year old exclaimed, "Kino done it to me."

the declaration was made by the husband or wife of the accused in a criminal case." McCormick, *Law of Evidence,* 1st Ed. (1954) at 582. (Emphasis supplied.)

 A brief review of the case law leads us to conclude that a hard and fast rule is inappropriate and we conclude, therefore, that the admissibility or rejection of "excited utterance" testimony can best be determined on a case by case analysis. One cannot seriously contend that an excited utterance is admissible where the declarant is hopelessly insane and thereby incapable of making any rational statement concerning an event that he or she either experienced or observed. At the same time, excited utterances should not be ruled out solely because of one's inability to comprehend an oath. Each case must be considered on the basis of the factual scenario presented.

In *State v. Rothi,* 152 Minn. 73, 188 N.W. 50 (1922) the Court refused, in a rape case, to admit testimony as to the declarations of a 16 year old child so imbecilic that she could not be placed upon the witness stand. In *State v. Gorman,* 229 Minn. 524, 40 N.W.2d 347 (1949), however, the Minnesota Court admitted, as part of the *res gestae,* the statement of a child too young to qualify as a competent witness. Likewise, the Ohio Court in *Hornbeck v. State,* 35 Ohio St. 277 (1879), held inadmissible the spontaneous statements of declarants incapable of taking an oath by reason of imbecility, insanity or infancy.[2]

Conversely, the Court in *Henry Vogt Machine Co. v. Chamberlain,* 279 S.W.2d 224 (Ky.1955), took the position that notwithstanding that an insane person is not competent to testify, other witnesses may testify to his statements if they were part of the *res gestae. Vogt* involved statements made by an allegedly insane off-duty employee who shot two fellow employees.

The New Jersey courts have also opted for the admission of spontaneous declarations made by an individual incompe-

---

**2.** The prohibition as to statements of children was overruled in *State v. Lasecki,* 106 N.E. 660 (1914).

tent to testify because of mental deficiency. In *State v. Simmons*, 52 N.J. 538, 247 A.2d 313 (1968), *cert. denied*, 395 U.S. 924, 89 S.Ct. 1779, 23 L.Ed.2d 241, the Court held that the testimony by police officers and the mother of a 16-year-old deaf mute individual with an intellectual age of less than seven years, as to statements made by the girl regarding a sexual attack upon her by the defendant, was admissible as a spontaneous declaration. That testimony consisted of the child hysterically pointing to her private parts and then pointing to the defendant. *Accord, Wilson v. State*, 49 Tex.Cr.R. 50, 90 S.W. 312 (1905); *Price v. State*, 41 Ala.App. 239, 128 So.2d 109 (evidence of complaints by 62-year-old rape victim whose mind came and went and who was difficult to understand was admissible as part of *res gestae* although the victim was incompetent to testify at the trial).

■ Turning to the case *sub judice*, we think the fact that the victim was apparently capable of maintaining herself in her own apartment and that she, in an excited state, was able to state to a neighbor, James Creighton, that she had just been beaten and robbed, reasonably precluded suspicion of unreliability and was admissible as an excited utterance. Her inability to testify in court at a later time does not preclude the admission of her earlier statement.

IB Applicability of the Excited Utterance Exception to the Present Case.

The appellants next contend that the statement introduced by the State in which the victim related the circumstances of the beating and robbery to Officer Bowen was not within the excited utterance exception to the Hearsay Rule. We disagree.

Officer Brown testified that he arrived at the scene of the incident to find the victim very upset and bleeding from her face. As the officer approached her she turned to him and told him she had been beaten and robbed. The officer then stated he "had to get her calmed down a little bit" and then asked her "point blank" what had happened. He described her response as follows:

"Mrs. Littleton stated to me that she was in her home, and while she was in her home in the second floor apartment two people came in there, they jumped her. As she looked up she seen them. (sic) They jumped her, striking her to the floor, then kicked her several times, continued to beat her while she was on the floor and robbed her. At the time she reported $2.00 was taken. At the time, being excited, she did not know exactly how much but she knew $2.00 definitely was taken from her. She complained they continued to beat her, and beat her and beat her she said."

We find that the facts surrounding the victim's statements to Officer Bowen clearly satisfied the requirements of the excited utterance exception. The essence of the exception is the lack of opportunity of the declarant to have reflected on the events about which the statement is concerned. It requires a startling event and a spontaneous statement which is the result of the declarant's reaction to the occurrence. *Mouzone v. State*, 294 Md. 692, 452 A.2d 661 (1982), (citing McCormick, *Evidence*, § 297 (2nd Ed. 1972)). In the instant case, the victim, an 89 year old woman, had just been robbed and severely beaten in her own home. She was upset enough to run out into the street wearing only an open housecoat. The investigating officer indicated that he had to get her calmed down to make sense of her statements. The question of whether the statements were made under conditions to satisfy the spontaneous requirement of the excited utterance exception is a matter within the trial court's discretion. *Moore v. State, supra.* Under the circumstances of this case, it was not an abuse of discretion for the trial judge to find that the statements were uttered spontaneously.

## II

Appellants also argue that the admission into evidence of the statements made by the victim deprived them of their right to confrontation. We decline to address this

issue. A constitutional question which was not tried and decided in the circuit court has not been preserved for appellate review. Md.Rule 1085; *Smith v. State*, 16 Md. App. 317, 295 A.2d 802, *cert. denied*, 267 Md. 744 (1972).

### III

Appellants' last basis for overturning the judgments below concerns the sufficiency of the evidence. This argument is without merit. The presence of a person at the scene of a crime, although not sufficient in itself to establish guilt, is an important factor to be considered in determining guilt of that crime. *See Tasco v. State*, 223 Md. 503, 165 A.2d 456 (1960). Flight from the scene of a crime is also a factor which may be considered as evidence of consciousness of guilt. *Sewell v. State*, 34 Md.App. 691, 368 A.2d 1111, *cert. denied*, 280 Md. 734 (1977). In the present case, witnesses placed the appellants in the yard of the victim's home at the approximate time of the crime. Furthermore, the appellants fled the scene when they saw the victim approach. Because the factual findings of the lower court were not clearly erroneous, appellants' convictions must be affirmed. Md.Rule 1086.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.