526 A.2d 66

**Donald LEWIS**

v.

**STATE of Maryland.**

No. 1128, Sept. Term, 1986.

Court of Special Appeals of Maryland.

June 4, 1987.

404

Victor A. Houlon (Pickett, Houlon & Berman, on brief, Hyattsville), Philip H. Armstrong (Louis J. Fiechtner and Heeney, Armstrong & Heeney, on brief), Rockville, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, Alexander Williams, Jr., State's Atty. for Prince George's County and Thomas McManus, Asst. State's Atty. for Prince George's County, on brief, Upper Marlboro), for appellee.

Argued before MOYLAN, ALPERT and ROSALYN B. BELL, JJ.

ALPERT, Judge.

Like the immovable object meeting the irresistable force, here the right of cross-examination confronts the right of the trial judge to limit it. We believe the trial judge's constraints were a bit too stringent.

Appellant Donald Lewis (Lewis) was tried by a jury upon an eight-count indictment in the Circuit Court for Prince

George's County. The jurors found Lewis guilty of attempted first degree rape, use of a handgun in the commission of a crime of violence, third degree sexual offense, assault and battery. They found Lewis not guilty of assault with intent to rape and fourth degree sexual offense. The court later sentenced Lewis to terms of 20, 5 and 3 years on those convictions not merged and ordered the terms to be served concurrently. The court suspended all but 5 years of the total sentence.

On this appeal, Lewis presents two issues:

1. Whether the trial court improperly limited defense counsel's cross-examination of the prosecuting witness?

2. Whether he was denied his constitutional right to a speedy trial?

About the incident from which the charges against Lewis arose, it is sufficient to state: Lewis met and befriended Pamela Valentine in November, 1984; later, they drove to Lewis's sister's house where, according to Ms. Valentine, Lewis tried unsuccessfully to rape her; Valentine escaped, ran into the street, sought help from several people, called police, and eventually received medical attention.

### 1. *Cross-examination*

The issue of a cause rarely depends upon a speech and is but seldom even affected by it. But there is never a cause contested, the result of which is not mainly dependent upon the skill with which the advocate conducts his cross-examination.[1]

With these words of Lord Brougham in mind, we turn to appellant's first issue, by which he contends that the trial court improperly terminated his cross-examination of the prosecuting witness. Appellant asserts that the court's ruling violated his constitutional right to confront the wit-

---

1.  *See* Wellman, *The Art of Cross Examination,* p. 21.

nesses against him.[2]   The State counters that the court properly exercised its discretion to limit the scope of appellant's inquiry.

(a) The Testimony and Ruling

The State called Pamela Valentine to the stand to testify to Lewis's attack upon her.   Her testimony on direct examination lasted approximately 45 minutes.   In addition to recounting Lewis's attack, the witness stated that she ran from the house, jumped into a postal carrier's car and told him that Lewis had tried to rape her.   Lewis approached the car and spoke to Valentine.   When the postal carrier refused to drive her to safety, Valentine testified, she ran to a nearby house where she told the owner what had happened. When the owner of that house refused to help her, Valentine ran to another house where, once more, she told a man she had been attacked.   The witness also testified that, later that day, she received medical attention and told her doctor what Lewis had done.

Counsel for appellant then began a somewhat tedious and repetitive cross-examination.   Thirty minutes into this cross-examination, counsel was called to the bench and given the following warning:

You have now used about a half hour of cross-examination on what appears to me to be a lot of collateral matters.

The point I am asking you to the bench now is to tell you how much time you have used and to remind you that you don't have an unlimited amount of time with this witness.   So you know, I am probably going to start cutting you off when we get to the hour point in time or shortly thereafter.

---

**2.** The Confrontation Clause of the Sixth Amendment to the United States Constitution, made binding on the states through the Due Process Clause of the Fourteenth Amendment, *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), reads, "In all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him."

The point is that you've got to use your time wisely and use it for productive areas of cross-examination.

Forty minutes later, the court announced from the bench, "I will give you five more minutes." Shortly thereafter, the court interrupted counsel:

All right. Mr. Houlon. That's the end of your time. If you wish to come forward and proffer any additional cross-examination that you want to make, you may do so.

At the bench, counsel requested an opportunity to cross-examine Ms. Valentine about her medical treatment and her contact with the mailman and three neighbors immediately after the attack. The court denied that request. Defense counsel then asked the court to reconsider its action or, in the alternative, to grant a mistrial. The court explained and ruled:

Well, as the trier of fact, I have obligations not only to the defendant, but I have obligations to the State, and I have obligations to the witnesses, and I have obligations to the fact-finder, the jury. I can't view any one of those obligations in an isolated fashion, and I will not view them in an isolated fashion, and the reason why I exercised my discretion in cutting off cross-examination—and no one has suggested I do not have the discretion to do that—certainly a defendant doesn't have a right to unlimited cross-examination.

The reason why I have exercised my discretion in cutting off cross-examination is because it has been repetitive. It hasn't gone directly to issues relating to credibility of the witnesses. I have certainly given counsel abundant opportunity to make choices into areas of inquiry. You had about 45 minutes from the time of my warning if you had desired to reach the areas that you wanted. You could have very easily, in my judgment, have not used some of the repetitive nature of the questioning that you did.

So, for those reasons, your motion to reconsider is denied. Your motion for mistrial is denied.

The court excused the jury and called a recess until the following day. The next morning, the State recalled Pamela Valentine for re-direct examination. Appellant re-cross-examined the witness but did not inquire into matters precluded by the court's ruling of the previous day.

Simply stated, shortly after counsel began cross-examination of the State's key witness, the trial judge *sua sponte* imposed a one-hour limitation on that questioning. When counsel exceeded his hour, the court terminated the unfinished examination because the court believed counsel's inquiry was repetitive and circuitous. The court remained steadfast in its ruling despite counsel's proffer that he intended to move on to areas covered on direct examination related to the witness's credibility.

(b) The Law

The United States Supreme Court has unambiguously declared that the right to cross-examination is part of a defendant's right of confrontation:

It cannot seriously be doubted at this late date that the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him. And probably no one, certainly no one experienced in the trial of lawsuits, would deny the value of cross-examination in exposing falsehood and bringing out the truth in the trial of a criminal case. *See, e.g.,* 5 Wigmore, Evidence § 1367 (3d ed. 1940). The fact that this right appears in the Sixth Amendment of our Bill of Rights reflects the belief of the Framers of those liberties and safeguards that confrontation was a fundamental right essential to a fair trial in a criminal prosecution. Moreover, the decisions of this Court and other courts throughout the years have constantly emphasized the necessity for cross-examination as a protection for defendants in criminal cases.

*Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965) (footnote omitted); *see also Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d

934 (1965) (a primary interest secured by the confrontation clause is the right to cross-examination).

■ In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), however, the Supreme Court noted that the exercise of this right is not unlimited. Rather, the right to cross-examine an adverse witness is "[s]ubject always to the broad discretion of a trial judge to preclude repetitive and unduly harrassing interrogation...." 415 U.S. at 316, 94 S.Ct. at 1110. *See also, Delaware v. Van Arsdall*, 475 U.S. 673, ——, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). That discretion notwithstanding, if the limitations imposed upon cross-examination inhibit the ability of the accused to obtain a fair trial, the rule vesting the court with discretion to disallow questions on cross-examination is "manifestly inapplicable." *State v. Cox*, 298 Md. 173, 183, 468 A.2d 319 (1983), quoting *DeLilly v. State*, 11 Md.App. 676, 681, 276 A.2d 417 (1971).

(c) Did the court abuse its discretion?

■ In setting a prospective time limit to appellant's cross-examination, the court acted arbitrarily. When it imposed the limit, the court did not know where appellant's inquiry might lead or what unexplored, pertinent matters the witness might, if prompted, disclose. Cross-examination is, to some degree, exploratory and a certain amount of latitude must be afforded. While trial courts have broad discretion to control the extent of cross-examination upon a particular topic, *Johnson v. State*, 30 Md.App. 512, 515, 352 A.2d 371 (1976), prospective time constraints will be reviewed more closely. Such a ruling precludes inquiry into topics unknown to the court. Yet, "[t]he essence of discretionary power in a trial court is 'that the judgment and discretion must be exercised in solving the exact problem of the law, *upon all the considerations which properly enter into the problem, and form it.*'" *Williamson v. State*, 284 Md. 212, 214–15, 395 A.2d 496 (1979), quoting *Lee v. State*, 161 Md. 430, 441, 157 A. 723 (1931) (emphasis added). When a court terminates cross-examination without first

informing itself of facts essential to its ruling, it abuses its discretion. *See Beasley v. State,* 271 Md. 521, 535–36, 318 A.2d 501 (1974). By limiting the length of Lewis's interrogation in advance of a particular inquiry, the court below ruled without a sufficient factual basis. We would also point out that if courts were free to impose time constraints at the beginning of questioning, an opportunistic opponent could easily frustrate the basic objectives of cross-examination with objections and requests to approach the bench.

■ Defense counsel's cross-examination was extremely repetitive. Several times he quizzed the witness exhaustively about her claim that she and Lewis drove to the house to get his business card. Counsel asked twenty-three questions merely to determine that Valentine spoke to Lewis 3 or 4 times before they agreed to have lunch together. Clearly, the court was free to disallow those and other repetitive questions when posed. *See Davis,* 415 U.S. at 316, 94 S.Ct. at 1110. Nevertheless, all of counsel's questions were asked in an effort to support Lewis's assertion that Valentine went to his sister's house, not for his card, but for a tryst. Albeit slowly, the inquiry progressed chronologically through the events of that fateful November day. Thus, while repetitive, the cross-examination was not frivolous or irrelevant. The proper ruling under such circumstances and in light of the gravity of Valentine's testimony was to preclude further cross-examination on topics already explored. Once counsel proffered that he intended to move on to other equally relevant topics, the court abused its discretion in refusing to lift its earlier imposed limitation.[3]

---

**3.** We do not mean to imply that a court may never break off cross-examination altogether. However, if such a break is ordered, counsel must be given an opportunity to proffer what matters he hoped to develop through his interrogation. If the evidence proffered is a proper matter for cross-examination not previously explored, the court disallows further questioning in peril to defendant's right of confrontation.

(d) Did the court's abuse violate defendant's right of confrontation?

■ Cross-examination has at least two functions: to develop more fully facts brought out on direct examination and to test the credibility of the witness. The ruling below short-circuited both of those functions. In depriving Lewis of the benefits of cross-examination, the court violated his right of confrontation. We explain.

On direct examination, Valentine stated that she described the attack to several people shortly after it occurred. Thus, Valentine's contacts with these people were proper matters for cross-examination in order, among other reasons, to elicit any details concerning her post-attack statements, behavior and physical condition that might not have come out on direct examination. *DeLilly*, supra, 11 Md.App. at 681, 276 A.2d 417. No one but Valentine and Lewis witnessed the events that led to Lewis's arrest. At trial, they gave two distinct accounts of what happened: she testified to a vicious, unprovoked sexual assault; he, to a rejected sexual advance, a slap and a shove. Thus, Valentine's *res gestae* statements, behavior and physical condition were particularly important as they might tend to support one of those two competing accounts. The probative value of this kind of proof is well recognized. *See, e.g., Johnson v. State*, 63 Md.App. 485, 492 A.2d 1343 (1985). Appellant was entitled to elicit the details of Valentine's contacts with these individuals through cross-examination.

■ More significantly, however, the areas of cross-examination denied to Lewis compromised his ability to test Valentine's credibility. The credibility of any witness is a proper subject for cross-examination. *Cox*, supra, 298 Md. at 178, 468 A.2d 319. The fundamental importance of cross-examination to test the credibility of a witness is especially keen, however, where, as here, the weight of the State's case rests almost exclusively upon the testimony of the witness cross-examined. Valentine was the State's only witness to the events in that house on that day. Upon her

allegation, Lewis faced a possible life sentence. In its closing argument, the State accurately portrayed this case as "the word of Mr. Lewis balanced against the word of Ms. Valentine, ... a clash of two stories."

Valentine related the attack to the mailman and to neighbors immediately after it occurred and to her doctor later that day. Cross-examination on these encounters and other events immediately after the attack might have proven useful to the defense in challenging the witnesses' credibility. For instance, Valentine stated on direct examination that when Lewis approached the mail carrier's car from *her* window she was "panic-stricken," "felt like a caged animal" and "like I was going to die." The mail carrier testified that Lewis approached the car from *his* side, and that Valentine had "no reaction. She just sat there." The jury was entitled to the benefit of Lewis's cross-examination on these points and to draw inferences from that inquiry as to Valentine's veracity.[4] *See Davis,* 415 U.S. at 318, 94 S.Ct. at 1111.

The State argues that Lewis was presented with two adequate substitutes for Valentine's cross-examination: re-cross-examination of Valentine and cross-examination of the witnesses Valentine spoke to after the assault.

■ When the court terminated cross-examination, defense counsel specifically requested that he be permitted to ask Valentine about her post-attack contacts and medical

---

**4.** The opportunity to present forcefully Valentine's uncross-examined factual account and unimpeached credibility was not lost upon the State's Attorney during his summation. Indeed, in the course of that summation, the State remarked:

> Miss Valentine came to court, and as I told you, in a public room raised her hand, took the oath of perjury, took the oath to tell the truth, but not only did she have to do that, ladies and gentlemen, she had to be cross-examined.

> Well, you heard that cross-examination of Miss Valentine, and you know about what she told the police originally at the scene and what she is telling you here today. Do you think after that cross-examination you really doubted her truth or veracity? Do you think that she was confused or misled as to any point or misled you as to any point?

treatment. The court denied that request. Counsel was not obliged to invite a contempt citation by violating that ruling during recross-examination.[5] Nevertheless, relying on *Funkhouser v. State*, 51 Md.App. 16, 440 A.2d 1114 (1982), the State argues that by failing to pursue these matters on recross-examination, Lewis waived his right to challenge the court's earlier action. In *Funkhouser*, this court held that a defendant waived his right to challenge the constitutionality of the Rape Shield Statute.[6] In that case, the defendant hoped to introduce evidence of the victim's past sexual conduct. During a pretrial motions hearing, Funkhouser disclosed the nature of his proof. Pursuant to the Rape Shield Statute, the court granted the State's motion *in limine* to exclude the evidence. Funkhouser made no proffer of the evidence at trial but challenged the court's ruling on appeal. A ruling *in limine*, we said, was not a ruling on the evidence and Funkhouser waived his constitutional challenge by failing to offer the evidence at trial. 51 Md.App. at 23–24, 440 A.2d 1114. Unlike the *Funkhouser* court's ruling *in limine*, the court's pronouncement on the scope of cross-examination in the case at bar was a ruling on the evidence. Lewis preserved his challenge to that action by his prompt objection.

■ Nor are we persuaded that the court's ruling was made harmless, as the State suggests, by Lewis's opportunity to cross-examine the individuals Valentine encountered after the incident. We have already indicated that Valentine's testimony and thus her credibility were essential to the State's case. Her testimony could not be developed nor her credibility challenged through other witnesses. *See Douglas v. Alabama*, 380 U.S. 415, 419–20, 85 S.Ct. 1074,

---

5. Indeed, the court later warned defense counsel in ruling on the scope of another cross-examination, "You will be held in contempt if you disobey a direct order of the court...."

6. Md.Ann.Code, Art. 27, § 461A (1982 Repl. Vol.). That statute bans reputation and opinion evidence relating to the victim's chastity in trials for various sexual offenses except in certain circumstances after an *in camera* inspection of the evidence.

1077–78, 13 L.Ed.2d 934 (1965) (cross-examination of officers to whom witness made statement could not substitute for cross-examination of witness to test the truth of his statement). Essentially, the State is arguing that Lewis failed to provide a record upon which it could argue harmless error. We find no merit to such an argument.

By limiting appellant's cross-examination of the prosecuting witness, the court violated Lewis's right of confrontation.

(e) Does the violation warrant a new trial?

■ Denying a defendant an opportunity to cross-examine an adverse witness does not fit within the category of constitutional errors [6A] that are deemed prejudicial in every case. *Van Arsdall, supra,* 106 S.Ct. at 1438.

The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts.

---

**6A.** We observe, however, that to deny defense counsel cross-examination of critical witnesses may violate the defendant's right to effective assistance of counsel. *People v. Pate,* 625 P.2d 369, 370 (Colo., 1981); *see also Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977) (defendant's right to counsel violated when victim was permitted to testify that she had identified defendant at preliminary hearing at which accused appeared without counsel; court indicating at note 5 that suggestiveness of identification could have been avoided by, among other things, cross-examination of the witness at the hearing); *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (guiding hand of counsel, including cross-examination of witnesses, essential to protect accused's right to effective assistance of counsel at pretrial confrontation). And it has been recognized that "some types of ineffective assistance [of counsel] lead to automatic reversal [, *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984) ]," *e.g.,* no showing of prejudice is required to strike down "... a procedure which denies the right of effective cross-examination [, *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974) ]." Whitebread and Slobogin, Criminal Procedure, § 32.03 (2d Ed.1986) at 800–802. *See also United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984).

These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.* (citations omitted). Thus, for the purposes of our inquiry, we must assume the damaging potential of the cross-examination denied to Lewis. *Id.* Accordingly, we assume that had appellant been permitted to cross-examine Valentine, the witness could have related facts about her *res gestae* statements and behavior tending to belie her version of the incident. We must also assume that the cross-examination would have tended to discredit Valentine's testimony in general. With those assumptions in mind, we must now ask whether the court's error was harmless beyond a reasonable doubt.

In this part of our inquiry, we look to the "host factors" set forth in *Van Arsdall.* As previously indicated, Valentine's testimony was the "heart and soul" of the State's case. No other person witnessed the events which led to the charges against Lewis, and he made no inculpatory statements. Valentine's testimony was not cumulative. Subsequent witnesses gave varying accounts of her behavior and physical condition after the incident. These accounts by other witnesses tended to support both versions of the incident. In addition to the limitations of which appellant complains, cross-examination was otherwise restricted: the court repeatedly interrupted counsel and held him to a mere 75 minutes of inquisition. As for the overall strength of the State's case, we note that it depended upon the word of one witness and that Lewis was convicted of only 4 of the 8 charges against him. Thus, the "overall strength" of the State's case was not Herculean.

On the basis of these facts, we cannot say that the court's error in denying Lewis further cross-examination of Pamela

Valentine was harmless beyond a reasonable doubt. There-fore, we shall reverse and remand for a new trial.

### 2. *Timely Trial*

Lewis next asserts that the delay in bringing his case to trial violated his constitutional right to a speedy trial.[7] Though we shall reverse Lewis's conviction upon his first issue, we would be remiss were we not also to resolve his claim of having been denied a speedy trial. After reviewing the procedural history of this case, we perceive no such violation to date. Our reasons follow.

We must first determine whether the delay com-plained of is sufficiently long to be presumptively preju-dicial to the accused. *Brady v. State,* 291 Md. 261, 264, 434 A.2d 574 (1981). If the length of the delay supports such a presumption, we must apply the four-factor balancing test set forth in *Barker v. Wingo*[8] to determine whether a constitutional violation lies behind the presumption of preju-dice. *Id.* Those factors include: (1) length of the delay; (2) reason for the delay; (3) defendant's assertion of his right to a speedy trial; (4) actual prejudice to the defendant. *Id.* at 265, 434 A.2d 574. The State concedes, as it must, that the 19½ month hiatus between Lewis's arrest and trial[9] is of constitutional dimension. Thus, we move to the *Barker* balancing test.

### (a) Length of Delay

The 19½ month delay, although enough to generate a constitutional question, is not controlling. *Brady,* 291 Md.

---

7. The Sixth Amendment to the U.S. Constitution reads in relevant part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." This clause is applicable to the states through the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967).

8. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

9. The bracket dates are: 11/9/84 (arrest) and 3/30/86 (trial).

at 266, 434 A.2d 574. Nevertheless, the delay weighs against the State for the purpose of this balancing test. *Id.*

(b) Reasons for Delays

Appellant was arrested November 9, 1984, and indicted on May 22, 1985. His trial was originally scheduled for September 4, 1985. Upon appellant's motion dated August 29, 1985, the trial date was rescheduled to November 12 of that year. On November 12, appellant requested another continuance in open court. A new trial date of June 30, 1986 was set. On that day, Lewis was tried.

■■ Although the State concedes that the November, 1984 to September, 1985 delay is chargeable to it, this is not completely true. The State is generally given a 180–day "orderly procedure" period of allowable delay following a defendant's arrest. *See Wise v. State,* 47 Md.App. 656, 675, 425 A.2d 652 (1981). A failure to bring a case to trial during this period is not weighed against the State in a *Barker* analysis. *Id.* Thus, only the 4 months following this 180–day period, but before Lewis's original trial date, are chargeable to the State. In light of appellant's August 29, 1985 representation that he was unprepared at the end of those 4 months, however, we shall not assign great weight to this charge. *See Jackson v. State,* 69 Md.App. 645, 654, 519 A.2d 751 (1987). Both sides were engaged in the preparation of their cases from November, 1984 through September, 1985.

The parties agree that the September 4, 1985 to November 12, 1985 delay is chargeable to neither side. That intermission resulted from a mutual unreadiness to proceed to trial on the original trial date. On November 12, 1985, however, appellant requested another continuance. The November 12 trial date was pushed back to June 30 and this 7½ month delay is chargeable to defendant.

Of the total 19½ month delay, we charge 4 months (June-September, 1985), without great weight, to the State

and 7½ months (November, 1985–June, 1986) to the appellant. The balance is charged against neither side.

#### (c) Assertion of Right

Although charged in November of 1984, appellant did not assert his right to a speedy trial until November 15, 1985, three days after requesting his second continuance. No further continuances were asked for or granted after appellant's assertion. Lewis's late assertion of his speedy trial right must be weighed heavily against him. *See Jackson,* 69 Md.App. at 654–55, 519 A.2d 751.

#### (d) Actual Prejudice

Appellant was not incarcerated during the 19½ months he awaited trial. He points, however, to the personal anxiety and public opprobrium he suffered because of these charges and to the loss of two potential witnesses caused by the delay as the source of his prejudice. He also states that he "endured nine months under a thirty thousand dollar bail bond." We believe, however, that Lewis's endurance under the bond is a part of and not in addition to the general anxiety he suffered while these charges pended. We shall assess the prejudice to Lewis's person and defense caused by the delay.[10]

The anxiety suffered by an accused, and the impairment of his defense, constitute actual prejudice for the purpose of our inquiry. *Brady,* 291 Md. at 267, 434 A.2d at 574. Yet, Lewis requested and received a 7½ month continuance after having been given his second trial date. This indicates a conscious choice to endure further his anxiety and to risk impairment to his defense in exchange for a

---

**10.** Appellant also *suggests* that the "accuracy of recollection[s]" of those who testified were compromised by the delay. As a general proposition, we recognize that memory fades with time. This is true of State and defense witnesses. Nevertheless, appellant has not affirmatively asserted that any witness's memory was compromised by the 19½ month delay, nor does he point to any testimony in the transcript to support his suggestion. Therefore, we place no particular weight on this point.

more fully developed defense. Thus, Lewis placed less weight on the prejudice resulting from pretrial delay than on the benefits to be gained therefrom. We will assess no greater weight to that prejudice than did Lewis. *See Jackson*, 69 Md.App. at 656, 519 A.2d 751.

Further, appellant's assertion that he lost two witnesses because of the delay is not supported by the record. At trial, the victim testified that she spoke to several people immediately after the incident. Appellant claims that he was unaware of two of these witnesses until he heard the victim's testimony. Yet, Lewis does not explain how his failure to discover these people is attributable to the delay in bringing his case to trial. Indeed, we may assume that the 19½ month tarriance gave counsel greater opportunities to find and to interview witnesses. There is no suggestion that the two potential witnesses died or moved away;[11] appellant simply failed to discover them. Therefore, we are not persuaded that the 19½ month hiatus compromised appellant's ability to refute the charges against him.

We perceive no actual prejudice to appellant flowing from the slowness in bringing his case to trial.

(e) Conclusion

■ While the length of the delay weighs against the State, the reasons for the delay are chargeable slightly more to appellant than to the State. Appellant's tardiness in asserting his right to a speedy trial weighs heavily against him. Finally, we perceive no actual prejudice resulting from the hiatus. On balance, appellant's claim that he was denied his constitutional right to a speedy trial is unsupported by the record.

JUDGMENTS REVERSED; CASE REMANDED FOR A NEW TRIAL; COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.

MOYLAN, J., concurs with an opinion.

---

11. Nor does Lewis assert prosecutorial misconduct.

MOYLAN, Judge, concurring:

I join in both the judgment and the opinion of the Court. I concur separately only to note an irrepressible observation about the universality of great literature. This case is E.M. Forster's *A Passage to India* all over again. Something happened up there at the Marabar Caves. Was it an attempted rape? Was it some form of hysteria triggered by strongly ambivalent emotions imploding violently in a dark and isolated catacomb? Or was it some unmappable combination of the two as moods and signals shifted diametrically in mid-passage? The outside world will never know.

I stray from the opinion of the Court only insofar as it characterizes the cross-examination as "somewhat tedious and repetitive." Strangely, I did not find it, on line-by-line examination, to be so, although ordinarily I would be the first to do so. I heard echoes from Marc Anthony's Funeral Oration in the rhythmic and ironic repetition of the theme of the business card. "And Brutus was an honorable man;" "And all of this for a business card?" Had I been conducting the cross-examination, I would like to think I might have handled it the same way. Does one plausibly journey by train and by elephant-back all the way to the Marabar Caves to get a business card?

The issue at stake, moreover, was not another of today's endless constitutional sideshows. It dealt refreshingly with the merits of guilt or innocence, the determination of which should remain the primary mission of the criminal trial. To disdain the former, one must in fairness encourage the latter.

I continue to believe that one of the virtues of practice in the state courts is expedition and speed. I continue to share the impatience of state judges when defense attorneys try "to make a federal case" out of straightforward events. An entitlement to one's day in court is not necessarily an entitlement to a week in court, lest four others, in a world of finite resources, be thereby denied their days in court. A case needs to be made for distributive due pro-

422

cess. There is always, however, the exception to prove the rule. Sometimes circling the prey is preferable to going in immediately for the kill. Lieutenant Greenwald's devastating cross-examination of Captain Queeg would never have worked had it gone straight for the jugular. It depended on peripheral things like yellow stains and strawberries. Despite an unabashedly strong and continuing predisposition to the contrary, I concur in the opinion of the Court *in this case* without reservation.