AARP v. Am. Family Prepaid Legal Corp., 2007 NCBC 4

STATE OF NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
06 CVS 10216

AARP,

           Plaintiff,

v.

AMERICAN FAMILY PREPAID LEGAL
CORPORATION, INC. d/b/a AMERICAN
FAMILY LEGAL PLAN; HERITAGE
MARKETING AND INSURANCE
SERVICES, INC.; STANLEY NORMAN;
JEFFREY NORMAN; MIKE FEDYNISZYN;
ROBERT MALARCHICK; AMERICA'S
RECOMMENDED MAILERS, INC.; AND
TINA HENNESSY,

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER**

*Brooks, Pierce, McClendon, Humphrey & Leonard, L.L.P. by Benjamin R. Norman and James T. Williams, Jr. and McDermott, Will & Emery, L.L.P. by John J. Dabney for Plaintiff AARP.*

*Hill, Evans, Jordan & Beatty, P.L.L.C. by Joseph R. Beatty and Polly D. Sizemore for non-party National Western Life Insurance Company.*

Diaz, Judge.

{1} Before the Court is the Motion of non-party National Western Life Insurance Company ("National Western") to Quash and Objections to Subpoena ("the Motion to Quash"). Pursuant to Rule 15.4 of the General Rules of Practice and Procedure for the North Carolina Business Court, the Court decides this discovery dispute without oral argument. After reviewing the Court file, the Motion to Quash and Supporting Brief, the Plaintiff's response in opposition, and National Western's reply, the Court **GRANTS** the requested relief

## I.

## FACTS

{2}    Plaintiff AARP is a non-profit corporation that focuses on the interests of persons age 50 and older.  (Compl. ¶ 11.)

{3}    Non-party National Western is a life insurance company chartered in Colorado, with its principal place of business in Austin, Texas.  (Richardson Aff. ¶ 3.)  National Western has no offices in this state, but it is licensed by the North Carolina Department of Insurance and sells its products here via a network of independent agents.  (Richardson Aff. ¶¶ 3-4, 6.)

{4}    AARP filed suit against the Defendants on 14 September 2006, asserting state law claims of trademark infringement, unfair competition, false designation of origin, trademark dilution, false advertisement, and unfair and deceptive trade practices, all related to the Defendants' alleged wrongful use of the AARP mark.  (*See* Compl. ¶¶ 38-60.)

{5}    In a nutshell, Plaintiff alleges that the Defendants have sold, and perhaps continue to sell, a variety of unsuitable financial services products provided by different insurance companies, including National Western, to senior citizens in North Carolina and other states by representing falsely that they are endorsed by AARP.  (*See* Compl. ¶¶ 38-60.)

{6}    On or about 20 December 2006, AARP served a subpoena *duces tecum* on National Western via certified mail at its corporate headquarters in Austin, Texas.  (Pl.'s Mem. in Opp'n to National Western's Mot. to Quash Ex. F.)  National Western received the subpoena on or about 27 December 2006.  (Mot. to Quash ¶ 3, Ex. A.)

{7}    The subpoena demanded that National Western produce fifteen categories of documents, with no limitation as to time.  (Mot. to Quash Ex. A.)  As to the specific categories, National Western was required to produce all documents, including e-mails, that it either sent to or

2

received from (a) one or more of the Defendants; (b) any state or federal agency concerning the corporate Defendants; (c) any person concerning the cancellation or attempted cancellation of any product that was provided in response to an order or request from one or more of the corporate Defendants; and (d) any person that purchased a product from National Western through one or more of the corporate Defendants. (Mot. to Quash Ex. A.) The subpoena also demanded production of all documents concerning actions that have been filed against one or more of the Defendants by the North Carolina Attorney General or the Pennsylvania Attorney General. (Mot. to Quash Ex. A.)

{8}	The subpoena demanded further that National Western produce the documents in the offices of AARP's counsel in Greensboro, North Carolina, on or before 15 January 2007.[1] (Mot. to Quash Ex. A.)

{9}	On 8 January 2007, National Western filed its Motion to Quash and Supporting Brief.

{10}	AARP filed its response in opposition to the Motion to Quash on 29 January 2007, and on 8 February 2007, National Western filed its reply.

## II.

## RULING

{11}	National Western makes two principal arguments in support of its Motion to Quash. First, it attacks the breadth and scope of the document subpoena, arguing that it (a) would authorize an unbounded and unduly burdensome fishing expedition through National Western's documents; (b) makes no allowance for the protection of privileged or confidential information; and (c) fails to allow a reasonable time for a response. (Brief in Supp. of Mot. to Quash 2-5.)

---

[1] AARP's counsel subsequently offered to review any responsive documents in National Western's Austin, Texas office. (Pl.'s Mem. in Opp'n to National Western's Mot. to Quash 7.) Pursuant to Rule 45(c)(4) of the North Carolina Rules of Civil Procedure, National Western's timely objection stayed any requirement to produce the documents.

3

Second, National Western argues that the subpoena is procedurally defective because it purports to command a non-party foreign corporation to produce documents in North Carolina for litigation pending in this state. (Brief in Supp. of Mot. to Quash 6.)

{12} AARP responds that the requested documents all bear on the conduct of the Defendants in passing off life insurance and annuity products—including those sold by National Western— as AARP-endorsed. (Pl.'s Mem. in Opp'n to National Western's Mot. to Quash 5-6.) AARP also agrees that National Western may (a) have as long as reasonably necessary to comply with the subpoena; (b) withhold any documents protected by the attorney-client privilege by tendering a privilege log; and (c) produce confidential documents pursuant to the terms of the protective order that I have already entered in this case. (Pl.'s Mem. in Opp'n to National Western's Mot. to Quash 5-6.)

{13} As to the alleged procedural deficiency in the subpoena, AARP argues that a subpoena is a "process" under the plain meaning of that term, and that National Western agreed—in exchange for the privilege of selling insurance in North Carolina—to submit to service of process under North Carolina law, including service pursuant to Rule 4 of the North Carolina Rules of Civil Procedure.[2] (Pl.'s Mem. in Opp'n to National Western's Mot. to Quash 8-9.)

{14} The Court agrees with National Western on both counts of its argument. Addressing the second argument first, it does not appear that our courts have considered the precise issue raised by the Motion to Quash, that is, whether service of a North Carolina subpoena is alone sufficient to compel a non-party foreign corporation licensed to do business in North Carolina to produce documents in this state.

---

[2] National Western also argues that AARP did not make proper service under Rule 4(j)(6) of the North Carolina Rules of Civil Procedure because it failed to address the subpoena to an officer, director, or agent of National Western, instead addressing it directly to the corporation. (Brief in Reply to Pl.'s Mem. in Opp'n to National Western's Mot. to Quash 7-8.) Although National Western's argument has merit, the Court resolves the Motion to Quash on other grounds.

{15} The Court concludes that it is not. Rule 45 of the North Carolina Rules of Civil Procedure allows parties to subpoena documents from non-parties. Specifically, a subpoena may include "[a] command to each person to whom it is directed to attend and give testimony or to produce and permit inspection and copying of designated records, books, papers, documents, or tangible things in the possession, custody, or control of that person therein specified." N.C.G.S. § 1A-1, Rule 45(a)(1)b (2006). But while the Rule appears to admit of no territorial limits on the power, it is elementary that the "subpoena power of a court cannot be more extensive than its jurisdiction." *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.,* 487 U.S. 72, 76, 101 L. Ed. 2d 69, 76 (1988) (holding that where "a court does not have subject-matter jurisdiction over the underlying action, and the process was not issued in aid of determining that jurisdiction, then the process is void.").

{16} According to AARP, the jurisdictional hurdle is satisfied by virtue of National Western's consent to be served with process as a condition of being a licensed insurer in this state. (Pl.'s Mem. in Opp'n to National Western's Mot. to Quash 8-9.) This argument, however, confuses the concepts of a court's personal jurisdiction over parties with its subpoena power over non-parties, and misreads the breadth of the relevant North Carolina statutes regarding service of process.

{17} The Court's research has unearthed two cases recognizing the distinction between a court's personal jurisdiction over parties and its subpoena power over non-parties. In *Phillips Petroleum Co. v. OKC Ltd. P'ship*, 634 So. 2d 1186 (La. 1994), the Louisiana Supreme Court held that its state courts had no statutory or other authority to compel a non-party Texas corporation (CKB) to attend or produce documents at a deposition to be held in the state. This

5

was so even though CKB had a resident agent for service of process and would otherwise have

been subject to the court's personal jurisdiction had it been sued. As the court explained:

> A principal consequence of designating an agent for service of process is to subject the foreign corporation to jurisdiction in a Louisiana court. Finding CKB subject to the personal jurisdiction of Louisiana courts, however, does not necessarily mean that this Texas corporation is bound to respond to a subpoena, duly received, by having to appear and produce documents in a Louisiana court in a lawsuit in which they are not a party. The concepts, and/or underlying purposes, of personal jurisdiction and subpoena power are simply different. Personal jurisdiction is based on conduct which subjects the nonresident to the power of the Louisiana court to adjudicate its rights and obligations in a legal dispute, sometimes arising out of that very conduct. On the other hand, the subpoena power of a Louisiana court over a "person" which is not a party in a lawsuit is based on the power and authority of the court to compel the attendance at a deposition of that person in a legal dispute between other parties. Whereas the long-arm statute extends Louisiana's personal jurisdiction over persons or legal entities beyond Louisiana's borders, there is no similar authority for extending the subpoena power of a Louisiana court beyond state lines to command in-state attendance of nonresident nonparty witnesses.

*Phillips*, 634 So. 2d at 1187-88.

{18}    Similarly, the Alabama Supreme Court in *In re: Nat'l Contract Poultry Growers' Ass'n,*

771 So. 2d 466 (Ala. 2000), reversed a contempt citation issued against a non-party foreign

corporation (NCPGA) for failing to respond to a subpoena requiring production of documents in

a foreign state. That NCPGA might otherwise be subject to personal jurisdiction in Alabama

was, according to the court, not enough:

> The fact that NCPGA may have sufficient contacts with the State of Alabama to subject it to the jurisdiction of the Alabama courts under the Alabama long-arm personal-jurisdiction provisions is irrelevant to the question presented in this case. . . . The underlying concepts of personal jurisdiction and subpoena power are entirely different. Personal jurisdiction is based on conduct that subjects the nonresident to the power of the Alabama courts to adjudicate its rights and obligations in a legal dispute. . . . By contrast, the subpoena power of an Alabama court over an individual or a corporation that is not a party to a lawsuit is based on the power and authority of the court to compel the attendance of a person at a deposition or the production of documents by a person or entity.

6

*Nat'l Contract*, 771 So. 2d at 469 (internal citations omitted).  Other jurisdictions have reached the same result.  *See, e.g., Syngenta Crop Prot., Inc., v. Monsanto Co.*, 908 So. 2d 121 (Miss. 2005); *Craft v. Chopra*, 907 P.2d 1109 (Okla. Civ. App. 1995); *In re Special Investigation No. 219*, 445 A.2d 1081 (Md. Ct. Spec. App. 1982).

{19}　Consistent with these decisions, the Court holds that the existence of personal jurisdiction over a non-party foreign corporation, standing alone, is insufficient to extend the Court's subpoena power to that corporation for purposes of a deposition or the production of documents.

{20}　This does not end the inquiry, however, as the Court must next consider whether the relevant insurance statutes regarding service of process extend the Court's subpoena power to a non-party foreign insurer.

{21}　It is true that North Carolina requires a foreign insurance company seeking to do business in this state to, among other things, file "with the Commissioner [of Insurance] an instrument appointing the Commissioner as the company's agent on whom any legal process under G.S. 58-16-30 may be served."  N.C.G.S. § 58-16-5(10) (2006).

{22}　It is also true that, under state law, a foreign insurer "may be served with process and subjected to the jurisdiction of the courts of this State pursuant to applicable provisions of Chapter 1 and Chapter 1A of the General Statutes."  N.C.G.S. § 58-16-40 (2006).

{23}　But as N.C.G.S. § 58-16-30 makes clear, the process specified by the insurance statutes is that contemplated by Rule 4 of the North Carolina Rules of Civil Procedure,[3] that is, service of a summons and complaint:

> As an alternative to service of legal process **under G.S. 1A-1, Rule 4**, the service of such process upon any insurance company or any foreign or alien entity licensed or admitted and authorized to do business in this State under

---

[3] Rule 4 deals exclusively with the filing of a complaint, which leads to the issuance of a summons, and which together are then "delivered to some proper person for service."  N.C.G.S. § 1A-1, Rule 4(a) (2006).

7

the provisions of this Chapter may be made by the sheriff or any other person delivering and leaving a copy of the process in the office of the Commissioner with a deputy or any other person duly appointed by the Commissioner for that purpose; or acceptance of service of the process may be made by the Commissioner or a duly appointed deputy or person. Service may also be made by mailing a copy of *the summons and of the complaint*, registered or certified mail, return receipt requested, addressed to the Commissioner.

N.C.G.S. § 58-16-30 (2006) (emphasis added).

{24}    Chapter 58 of the General Statutes provides residents of this State a simple procedure for obtaining service of lawful process upon foreign insurance companies doing business here. *Crain & Denbo, Inc. v. Harris & Harris Constr. Co., Inc.*, 250 N.C. 106, 110, 108 S.E.2d 122, 125 (1959). But as the Court in *Crain & Denbo* also noted, the process specifically referred to in the insurance statutes is that which is to be served in any action **against the insurer.** 250 N.C. at 109, 108 S.E.2d at 125. Thus, a foreign insurer doing business in North Carolina understands that it is subject to substitute service of process (via the Commissioner of Insurance) for lawsuits filed against it.

{25}    The cases also hold that statutes authorizing substituted service of process are in derogation of the common law and "therefore, are strictly construed, both as grants of authority and in determining whether service has been made in conformity with the statute." *Sink v. Easter*, 284 N.C. 555, 560, 202 S.E. 2d 138, 142 (1974) (quoting *Harrison v. Hanvey*, 265 N.C. 243, 247, 143 S.E.2d 593, 597 (1965)); *Coble v. Brown*, 1 N.C. App. 1, 5-6, 159 S.E.2d 259, 263 (1968).

{26}    The Court has no quarrel with AARP's unremarkable assertion that "[a] subpoena is a process[.]" (Pl.'s Mem. in Opp'n to National Western's Mot. to Quash 9.) But, it is quite another thing to say that a subpoena is the type of process that may properly be served on a non-party insurer pursuant to N.C.G.S. §§ 58-16-5 and 58-16-30. The relevant statutes simply will

8

not support such a result, particularly where, as here, the Court must construe strictly any such grant of authority.

{27}   My holding does not leave AARP without remedy.  It remains free to seek a commission or order from this Court requesting that a subpoena *duces tecum* issue from a proper court (whether in Texas, Colorado or elsewhere) for the production of the relevant documents.  What AARP may not do is attempt to streamline the process in contravention of the proper limits of this Court's authority.

{28}   Finally, I address briefly National Western's objections to the substance of the document requests attached to the subpoena.  AARP argues that its document requests fall well within the liberal "relevance" standard for discovery under Rule 26 of the North Carolina Rules of Civil Procedure.  (Pl.'s Mem. in Opp'n to National Western's Mot. to Quash 5-6.)  National Western responds that this broad standard does not apply when analyzing the scope of a subpoena *duces tecum* directed at a non-party and that the Court should look instead to the specific grounds set out in Rule 45(c)(3) for objecting to a subpoena.  (Brief in Supp. of Mot. to Quash 2-4.)

{29}   The Court need not resolve this particular disagreement because, by any standard, the requests in their present form are too broad.  For example, in its proposed Amended Complaint,[4] Plaintiff asserts that the Defendants' alleged scheme to fraudulently use the AARP mark has been ongoing "since at least as early as July 2004."  (Proposed Am. Compl. ¶ 40.)  Given that contention, there appears to be little justification for failing to set any temporal limit on the requests.  Additionally, many of the document requests blindly demand all paper that ever flowed between National Western and a particular Defendant, with little regard for the relevance of that paper to the allegations of the Complaint.

---

[4] AARP's Motion to Amend its Complaint remains pending before the Court.

{30} Perhaps recognizing that it may have overreached, AARP suggests that the discovery rules should bend a little because National Western is something less than an innocent non-party. (Pl.'s Mem. in Opp'n to National Western's Mot. to Quash 3, 6.) I remind AARP that the allegations in its Complaint are just that and, at least with respect to National Western, are irrelevant unless AARP intends to join National Western as a party to this action.

{31} National Western seeks an award of fees and expenses in bringing this Motion. The Court declines to enter such an award at this time, but should this matter come before the Court again with AARP having not made a good-faith effort to narrow its requests, the Court will revisit the issue.

## CONCLUSION

{32} The Court **GRANTS** the Motion to Quash.


This the 23rd day of February, 2007.