Hinkle, Margaret R., J.
On October 19, 2010, defendant Intelligent Integration Systems, Inc. (“IISI”) filed an emergency motion to compel compliance with a subpoena duces tecum directed to a nonparty, International Business Machines Corporation (“IBM”). After a hearing and review of the various pleadings, defendant’s motion is allowed in part.
BACKGROUND
IBM is in the process of a $1.9 billion acquisition of plaintiff Netezza Corporation (“Netezza"). The closing is scheduled for November 10, 2010. The purpose of defendant’s subpoena is to address IISI’s claim that Netezza has misappropriated IISI trade secrets.[1]
IISI has alleged in this litigation that Netezza is in possession of IISI’s Geospatial and Extended SQL Toolkit software products, the former of which IISI asserts was reverse engineered and then sold as a similar product by Netezza. IISI argues that it stands to lose further control of that purported trade secret software once IBM acquires Netezza. IISI states that information Netezza gave IBM about IISI’s software is “critical to obtaining a complete picture of what has happened to the IISI trade secrets now in Netezza’s *552 possession.” (IISI’s Em erg. Mot. for Contempt Order Enforcing Subpoena at 3.)
After its receipt of IISI’s Emergency Motion, the Court received a letter from counsel for IBM, stating, among other things:
Yesterday, IBM timely served on counsel for IISI IBM’s objections to the subpoena as well as a motion for protective order quashing the subpoena. We believe the subpoena to have been issued by the wrong court and to be unreasonably overbroad and oppressive, as well as an attempt to circumvent the normal sequence of discovery, and the procedures we understand to have been adopted in this case. We respectfully submit that IISI should take discovery on these topics first from Netezza, which is a party to the case.
IBM’s objections and motion for a protective order were timely served yesterday. It would have been unreasonable in the extreme to impose on IBM, a non-party, and to ask IBM to impose on the Court, the time, burden, expense and distraction of rushing into this Court to seek emergency protection from such an abusive subpoena served on such short notice regarding such a broad range of information involving such a large transaction. Moreover, as stated in IBM’s objections and motion for a protective order, IBM believes that the subpoena should have been issued by a New York court, a common procedure easily effected in a few days.
After a flurry of additional briefing, on October 21, 2010, this Court held a hearing on IISI’s motion. Both IISI and IBM have submitted post-hearing briefs.
IBM provides four reasons why IISI’s subpoena should not be enforced:[2] (i) it is allegedly improper to serve a subpoena duces tecum on a foreign corporation’s registered agent in Massachusetts: (ii) the subpoena is overbroad and unduly burdensome; (iii) IISI may not “end run” parly discovery through a non-party subpoena, and (iv) the subpoena is “unrelated” to the issues before the Court. This memorandum addresses only the issue of the propriety of service of defendant’s subpoena. The remaining issues will be addressed at the next hearing, currently scheduled for October 27, 2010.
From the affidavits of the parties, the following facts emerge.
IBM, a multinational company, is a New York corporation, with its corporate headquarters in that state. According to IBM’s web site, the largest IBM Software Development Lab in North America, housing “3,400 of IBM’s leading experts,” is located in Littleton. IBM’s Massachusetts presence also includes facilities in Cambridge, Waltham and Westford.
IBM states that its planned acquisition of Netezza has been directed by IBM personnel working in its corporate executive offices in Armonk, New York. Approximately 300 individuals have been involved in the acquisition on behalf of IBM, and more than 160 participated in its due diligence of Netezza.
On October 7, 2010, Edward Cronin, a constable authorized to serve process in Massachusetts, traveled to IBM’s principal place of business in Massachusetts, 550 King Street, Littleton, to serve the subpoena at issue under Rules 30(a) and 45 of the Massachusetts Rules of Civil Procedure for the production of documents and for a deposition scheduled for October 19, 2010.
IBM security and reception staff refused to accept the subpoena documents Cronin attempted to serve. They told Cronin to contact IBM’s legal department and gave him two phone numbers to do so. No one answered at either number.
Thereafter, security personnel told Cronin that IBM’s legal department would get back to him and that nothing further could be done. Cronin asked to speak with someone in charge to serve the subpoena properly. He was told by security and reception personnel that all process papers and subpoenas were to be submitted to CT Corporation Systems, IBM’s registered agent in Massachusetts. Cronin subsequently made service upon CT Corporation that same day, October 7, 2010.[3]
DISCUSSION
IBM argues that, although there appears to be no reported Massachusetts decision on point,
Massachusetts rules and statutes, as well as decisions by courts in other jurisdictions, make clear that it is improper to do what IISI has attempted — to serve a subpoena duces tecum upon a foreign corporation’s registered agent in Massachusetts. Subpoenas are governed by Rule 45 of the Massachusetts Rules of Civil Procedure. That Rule does not contemplate service on a non-resident’s registered agent. In contrast, Rule 4(d)(2) of the Massachusetts Rules of Civil Procedure does allow service of a summons & complaint upon a foreign corporation’s agent, but expressly does not apply to service of subpoenas . . . Massachusetts has a specific procedure for demanding documents and testimony from foreign corporations, which IISI did not follow. Massachusetts General Laws Ch. 223A, §10 sets forth that procedure, including obtaining a commission or letter rogatory from the Massachusetts court in which the action is pending, in order to then secure a subpoena from the state in which the witness and documents are located.
(Mem. of Non-Party IBM in Supp. of its Motion for Prot. Order [not filed formally] at 3.) For support, IBM relies upon Syngenta Crop Protection, Inc. v. Monsanto Co., 9078 So.2d 121, 124 (Miss. 2005); Phillips Petroleum Co. v. OKC Ltd. Partnership, 634 So.2d 1186 (La. 1994), and AARP v. American Family Prepaid Legal Corp., Inc., 2007 NCBC 4, 2007 WL 2570841 (N.C.Super., Feb. 23, 2007). Each of those cases con- *553 eludes as a general principle that a court’s subpoena power does not extend beyond the state in which it sits.
IISI argues in opposition that IBM misstates the law as to whether it is subject to the subpoena power of a Massachusetts state court.[4] According to IISI, rule 45 permits service of a deposition subpoena duces tecum upon a foreign corporation at either its in-state facility or its registered agent.
IISI argues that Branham v. Rohm & Haas Co., 2010 Phila.Ct.Com.Pl. LEXIS 123 (Apr. 26, 2010), pet. for rev. denied, 994 A.2d 1080 (Pa. 2010) (“Branham’j, vitiates the significance of the three cases upon which IBM relies. In Branham, the court affirmed the denial of a motion to quash a Pennsylvania state court subpoena issued to Dow Chemical, a Delaware corporation with a substantial presence in Pennsylvania but corporate headquarters elsewhere. Dow Chemical relied upon the same cases as IBM does here, see 2010 Phila.Ct.Com.Pl. LEXIS 123, at *8, a line of cases that the Branham court distinguished, observing; ‘The lack of in-state presence rendered [each nonparly in those cases] a non-resident and outside the power of the Court,” id. Adopting the Pennsylvania court’s reasoning, IISI argues that IBM’s registration to do business in Massachusetts and significant presence in this state lead to its amenability to service of the subpoena in the manner performed here.
No universal principle appears from these state cases. Decision law in this area has been described as having “haphazard, often competing approaches.” R.W. Scott, Minimum Contacts, No Dog: Evaluating Personal Jurisdiction for Nonparty Discovery, 88 Minn.L.Rev. 968, 981 (Apr. 2004); see generally R. Wasserman, The Subpoena Power: Pennoyer’s Last Vestige, 74 Minn.L.Rev. 37, 67-75 (outlining different state approaches to defining geographic reach of their courts’ subpoena power). Nevertheless, two principal reasons lead this Court to conclude that IISI made proper service of its subpoena upon IBM.
First, to the extent that IBM contests the point, rule 45 clearly encompasses service of a subpoena duces tecum upon both non-residents and nonparties. A plain reading of the rule shows that it contemplates service of a subpoena upon non-residents. In relevant part, the rule states;
A non-resident of the Commonwealth when served with a subpoena within the Commonwealth may be required to attend only in that county wherein he is served, or within 50 airline miles of the place of service, or at such other convenient place as is fixed by an order of court.
Mass.R.Civ.P. 45(d)(2). That rule 45 permits subpoenas to be served upon nonparties is apparent from, e.g., Fletcher v. Dorchester Mut. Ins. Co., 437 Mass. 544, 548-49 (2002) (‘The duty [to preserve evidence] placed on nonparties is one imposed by the rules governing subpoenas, and a violation of that duty has its own remedy under those same rules”), and the Reporter’s Notes to Rule 45 which discuss the various rights given nonparties under the rule, see 46 Mass. Gen. Laws Ann., Rules of Civil Procedure, at 450 (Thomson/West 2006). While, as noted, neither party has cited a Massachusetts appellate decision that has explicitly addressed the question, it surely follows that rule 45 permits service of a subpoena upon a non-resident nonparty like IBM in this case.[5]
Second, and without entering the conceptual thicket that has emerged to deal with the issue in other jurisdictions, there is considerable good sense in concluding that IBM is subject to in-state service of IISI’s subpoena. There can be no dispute that IBM has substantial presence in the Commonwealth: the largest IBM software development lab in North America— which houses 3,400 of IBM’s leading experts — is located in Littleton, and IBM operates additional facilities in Cambridge, Waltham and Westford. IBM has acknowledged that, consistent with constitutional due process and statutory concerns, it is amenable to suit in Massachusetts by service upon its registered agent. Thus, for IBM to challenge service of IISI’s subpoena under rule 45 in the straightforward manner utilized by its constable would appear to elevate form over substance.
ORDER
For the foregoing reasons, an order will enter that IISI has made proper service of the subpoena directed to International Business Machines Corporation.

 Netezza and IISI allege various other claims against each other. On August 20, 2010, in an agreed-upon first phase of this litigation as part of the Business Litigation Session Pilot Project, this Court allowed IISI’s motion for partial summary judgment on the claims involving breach of the Purchase and Distribution Agreement.

 IBM’s Motion for a Protective Order was served on IISI on October 18, 2010 and has not yet been filed with the Court. IBM does, however, in its opposition to IISI’s Emergency Motion ask for a protective order quashing the subpoena.

 There is no indication where the documents sought by IISI are located, and neither party has addressed that issue. Since all documents in this kind of case must be electronically stored and transmitted, their “actual” or “physical” location may not be strictly relevant (or even meaningful). IBM has been silent on this point and, perhaps notably, has not offered an affidavit or other representation stating that the requested information is located outside Massachusetts.

 IISI also argues that IBM ignored the subpoena until after the time for its compliance had passed and never bothered to appear for the deposition, while never seeking, let alone obtaining, a prior protective order. The Court does not address that issue in this memorandum.

 Contrary to IBM’s argument, this conclusion works harmoniously with G.L.c. 223A, §10, the statute IBM argues should instead govern subpoenas to foreign corporations. That statute provides the mechanism by which “[a] deposition to obtain testimony or documents or other things in an action pending in this commonwealth may be taken outside this commonwealth ...” (emphasis added). Particularly against the backdrop of the modem business age where, as here, there are rapidly evolving circumstances with imminent dead *554 lines, to adopt IBM’s approach would frustrate the requirement that the procedural rules “be construed to secure the just, speedy and inexpensive determination of every action,” Mass.R.Civ.P. 1; see Giacobbe v. First Coolidge Corp., 367 Mass. 309, 315 (1975) (discussing purpose and objective in construing procedural rules).